[No. B037558. Second Dist., Div. Two. Oct. 19, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
GORDON BARRY FRIED et al., Defendants and Respondents.

COUNSEL

Ira Reiner, District Attorney, Maurice H. Oppenheim and Brent Riggs, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, under appointment by the Court of Appeal, Laurence M. Sarnott, Howard Waco and Elizabeth Warner, Deputy Public Defenders, Robert Allan Zeller, Herbert Weiss and Gary M. Mandinach for Defendants and Respondents.

## OPINION

**COMPTON, J.**—An information charged defendants Gordon Barry Fried and Brian Donald Sellers with constructive possession of cocaine pursuant to Health and Safety Code section 11350, subdivision (a). The superior court granted their motions to set aside the information under Penal Code section 995, finding that the magistrate erred in conducting an in camera hearing to disclose the identity of a confidential informant without requiring the informant's personal appearance at that proceeding. The People appeal. We reverse.

The evidence adduced at the preliminary hearing established that on or about November 19, 1987, Detective David Kempton of the Los Angeles Police Department received information by telephone from an unidentified informant that defendants were selling cocaine and marijuana from their home and that they "had been arrested for the same thing a couple of years ago." Although he did not act immediately on that information, Kempton verified that defendants had been arrested on narcotic charges in 1986, and subsequently diverted. Some five days later, on November 24, 1987, he and several other officers proceeded to defendants' residence for the ostensible purpose of serving an outstanding traffic warrant on Sellers. Dressed in plain clothes, Kempton knocked on the door and attempted to purchase a quantity of drugs from an individual who identified himself as Sellers. After less than a minute of conversation, Kempton announced that he was a police officer and that Sellers was under arrest on the warrant. As the door opened, the detective entered and observed Sellers briefly remove a plastic baggie containing a green leafy substance from his right robe pocket and then attempt to secrete it by returning it to the same pocket. Believing the substance to be marijuana, Kempton conducted a brief patdown search and retrieved the baggie. At approximately the same time, Fried entered the living room.

While Kempton continued with his investigation, his partner, Officer Holtz, discovered an unidentified woman in an adjoining room. Appearing somewhat disoriented, she was handcuffed and ordered to join the others in the living room. As Sellers, Fried, and their female companion sat on the couch, Kempton, along with several other officers, observed a baggie of

marijuana, two rocks of cocaine, and other narcotic paraphernalia scattered about the room. During a subsequent conversation, Kempton informed the trio of the anonymous tip he had received and of the contraband he had seen since entering the residence. After learning that the woman did not live with defendants, the detective asked for and received permission to search the premises. Volunteering that he "had a real bad coke problem," Fried led Kempton to his bedroom where he pointed to a dish containing cocaine and two "little rocks" next to it on the headboard. The drugs were subsequently retrieved along with several documents bearing Fried's name. Meanwhile, a search of Sellers's bedroom likewise produced two pieces of rock cocaine, a small quantity of marijuana, and an envelope addressed to Sellers.[1]

While being transported to the police station after their arrest, defendants were advised of and waived their *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed. 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights. Fried admitted that the cocaine found in his bedroom belonged to him, along with the marijuana located in the living room, and that he had been "smoking it" while Kempton was standing at the front door. Sellers similarly indicated that he was "responsible" for the drugs found in his bedroom, and, after conferring with Fried at the station, took "the blame for the two rocks" discovered in the living room.

In cross-examining Detective Kempton at the preliminary hearing, defense counsel asked the name of the informant. The officer declined,[2] claiming privilege under Evidence Code sections 1040 and 1041. Further questions regarding the informant's identity were objected to by the prosecutor, and the objections were sustained. Defendants' attorneys argued that the informant was a material witness on the issue of guilt or innocence because "[w]e believe the informant was in [the residence] less than 24 hours before the arrest and there's a reasonable possibility or probability . . . that the informant may have left the contraband on the living room table there, and it was the informant who had previously given information to the police. . . . And that same informant, if given the opportunity, could come into court and testify that part or all of the contraband found in this case is his."

Based upon the foregoing, the magistrate granted defendants' request for an in camera hearing. Neither defense counsel nor the prosecutor participated in that proceeding, and Detective Kempton was the only witness who

---

[1]The cocaine retrieved from Sellers's room weighed .17 grams while that found in Fried's room weighed .15 grams. The cocaine found in the living room weighed .32 grams.

[2]Detective Kempton actually testified that he did not know the informant's name, but "if I gave you more of the conversation it would tend to identify the informant, because the informant is known or these defendants know the informant."

testified. At the conclusion of the hearing, the magistrate found that there was no "reasonable possibility that the informant whose identity is sought could give evidence on the issue of guilt which might result in the defendants' exoneration" and that "disclosure of the informant is against public interest because there is a necessity for preserving the confidentiality of the informant that outweighs the necessity for disclosure in the interest of justice." Defense counsel thereafter moved to dismiss the case, asserting in part that the magistrate erred by basing its ruling solely on the representations of the arresting officer without considering the testimony of the alleged confidential informant. The motion was denied and defendants were subsequently bound over for trial in superior court.[3]

After reviewing the transcript of the in camera proceedings, the trial court granted defendants' motions to set aside the information (Pen. Code, § 995)[4] based upon its belief that where the police have the means of identifying the informant, as they did here, "the law requires that the magistrate at a minimum, speak to the informant in the [in camera] hearing, rather than rely upon what the officer says the informant might or might not testify to." The court apparently felt compelled to reach this result because of its finding that "[i]nherent in [the magistrate's] decision [to conduct an in camera proceeding] is the determination that there must be some possibility [that the informant would shed light on the issue of defendants' guilt or innocence]." Although the court expressly recommended that the case be refiled, the People elected instead to prosecute the instant appeal.

■ The primary issue raised by this case, to wit, whether an alleged confidential informant must personally appear and testify at an in camera hearing, was resolved in *People* v. *Alderrou* (1987) 191 Cal.App.3d 1074 [236 Cal.Rptr. 740]. The court there held: "Neither expressly nor by implication does Evidence Code section 1042, subdivision (d) *require* the confidential informant to be present or to testify at the in camera hearing. Instead, that section says at the in camera hearing 'the prosecution *may* offer *evidence* which would tend to disclose or which discloses the identity of the informant. . . .' (Evid. Code, § 1042, subd. (d); [italics] added.) It says nothing about the type of evidence to be offered on these issues. Moreover, the language of this section contemplates the possibility the prosecution will introduce evidence of some kind which will only *tend* to disclose the informant's identity, not disclose it. If the confidential informant was always present and always testified, then his identity would always be disclosed to the judge. But the Legislature clearly anticipated there would be

---

[3] We note in passing that neither defendant moved to suppress evidence pursuant to Penal Code section 1538.5 at any time during the preliminary hearing.

[4] The court initially denied the motions under section 995 but later reconsidered its ruling after the transcript of the in camera hearing was made available for its review.

situations where the informant's identity was not revealed to the judge but where others would supply information perhaps about his relationship to the defendant or to the criminal transaction or to the premises involved which, if known to the defendant, might only tend to suggest the informant's identity." (*Id.* at p. 1079; italics in original, fn. omitted.)

We agree with the rationale expressed in *Alderrou* and adopt its holding here. *People* v. *Lee* (1985) 164 Cal.App.3d 830 [210 Cal.Rptr. 799], relied upon by defendants, is not to the contrary. In that case, the court observed: "Defendant contends testimony of police officers solely, and absent any testimony by the informer, was insufficient for the trial court to determine the informer was not possibly a material witness." (*Id.* at p. 835.) "[T]he statute does not expressly require the prosecution to produce the confidential informant before the trial court may make a determination. Defendant has not cited and we have not found any authority conditioning the trial court's determination of materiality on the presence and testimony of the confidential informant. . . . [¶] It was not error per se for the trial court to conduct [an] . . . *in camera* hearing to determine the fair trial issue without the personal appearance and testimony of the confidential informant at such hearing." (*Id.* at pp. 839-840; italics in original.)

We also disagree with the trial court's suggestion that defendants had met their burden of establishing that the informant was a material witness.

Having reviewed the transcript of the in camera proceeding, we are convinced, as was the magistrate, that there is no reasonable possibility that the informant could offer evidence on the issue of guilt which might result in defendants' exoneration. (See *People* v. *Garcia* (1967) 67 Cal.2d 830, 840 [210 Cal.Rptr. 799]; *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412, 419 [112 Cal.Rptr. 485].) While we are at a loss to understand why the informant's identity even became an issue at this stage of the proceedings, we are of the view that once the issue was raised defendants' offer of proof was inadequate to establish a prima facie case for disclosure. Under the circumstances presented here, there simply was no need for the magistrate to conduct an in camera hearing in the first instance. Evidence Code section 1042, subdivision (d)[5] does not require such a hearing if an informant is not

---

[5] Evidence Code section 1042, subdivision (d) provides: "When, in any such criminal proceeding, a party demands disclosure of the identity of the informant on the ground the informant is a material witness on the issue of guilt, the court shall conduct a hearing at which all parties may present evidence on the issue of disclosure. Such hearing shall be conducted outside the presence of the jury, if any. During the hearing, if the privilege provided for in Section 1041 is claimed by a person authorized to do so or if a person who is authorized to claim such privilege refuses to answer any question on the ground that the answer would tend to disclose the identity of the informant, the prosecuting attorney may request that the court hold an in camera hearing. If such a request is made, the court shall hold such a hearing out-

shown to be in a position to give possible testimony which will aid the defendant on the issue of guilt. ■ The mere assertion that the informant is a material witness on that issue, without any plausible support therefor, does not trigger the requirements of the statute. ■ Here, defense counsels' offer of proof failed to demonstrate that the informant was in a position to perceive ". . . either the commission or the immediate antecedents of the alleged crime" (*Williams* v. *Superior Court, supra,* 38 Cal.App.3d 412, 423) or that the informant did more than simply point "the finger of suspicion" at defendants (see *People* v. *Wilks* (1978) 21 Cal.3d 460, 469 [146 Cal.Rptr. 364, 578 P.2d 1369]; *People* v. *McShann* (1958) 50 Cal.2d 802, 808 [330 P.2d 33].)

The assertion that the informant may have been on the premises shortly before the search and planted the contraband where it would later be uncovered by the police was supported by nothing more than counsels' "information and belief." It was never once suggested that this hypothesis had any basis in fact nor that defendants believed it to be true. As we observed in *People* v. *Galante* (1983) 143 Cal.App.3d 709, 711 [192 Cal.Rptr. 184], "Every criminal trial is, or at least it ought to be, a serious and dedicated search for the truth; a societal proceeding designed to exonerate the innocent and to firmly establish the guilt of the malefactor. Neither goal would be subject to attainment if the action were converted into a game of 'blindman's bluff' wherein the presiding judicial officer is forced to make his rulings in the dark. Of course, if a defendant seriously asserting his innocence should fear that some factual disclosure would aid the prosecution in the presentation of its case, he may always reveal it to the court, *in camera*." The speculative possibility offered here that the informant participated in some plan to entrap defendants simply did not warrant a formal in camera hearing.

If defendants truly believed that the informant secreted the contraband in their residence sometime during the 24 hours preceding the search, they possessed the means to subpoena that individual at the time of the prelimi-

side the presence of the defendant and his counsel. At the in camera hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial. A reporter shall be present at the in camera hearing. Any transcription of the proceedings at the in camera hearing, as well as any physical evidence presented at the hearing, shall be ordered sealed by the court, and only a court may have access to its contents. The court shall not order disclosure, nor strike the testimony of the witness who invokes the privilege, nor dismiss the criminal proceeding, if the party offering the witness refuses to disclose the identity of the informant, unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial."

nary hearing. As Justice Gates pointed out in *Galante,* "while it may sometimes be necessary to 'speculate' concerning the knowledge possessed by an informant [citations], it is never necessary for a defendant to 'speculate' concerning his own role in the scenario, something which is, of necessity, already fully known to him. [Citations.]" (*Id.* at p. 711.) Here, nothing precluded defendants from subpoenaing all persons who may have visited their residence in the days or hours preceding the search. "A fair trial is not hindered where a defendant is not entitled to disclosure of, or confirmation of, the fact that a potential witness whose identity is or can be ascertained is in fact a police informant. With the defendant assured of a fair trial through his obvious cognizance of the identities of persons admitted to his own property, the disclosure that one of those individuals is a police informant does nothing to increase the fairness of the trial. Such a disclosure would, however, directly contravene the opposing side of the policy balance, that being the protection of information flow to law enforcement officials." (*People* v. *Hardeman* (1982) 137 Cal.App.3d 823, 829-830 [187 Cal.Rptr. 296].)

In any event, the record conclusively demonstrates that the informant was a nonparticipant, noneyewitness to the charged offense of constructive possession of cocaine. ■ "[W]here the defendant is charged with constructive possession of narcotics which is imputed by police discovery of contraband in a certain location, the disclosure of a nonparticipating, noneyewitness informant is required only if such an informant has experienced a 'very recent observation of contraband on those same premises . . . [and] if the evidence shows that persons other than the defendant were on the premises when the informer observed the contraband and the defendant was not then present or may have been not present.' [Citation.]" (*People* v. *Hardeman, supra,* 137 Cal.App.3d at p. 829.) ■ The evidence adduced in open court in this case establishes that the informant's observations occurred at least five days prior to Detective Kempton's search and that defendants were dealing in narcotics at that time. We think it clear, then, that the proximity of the informant to the charged offense is not close, not recent, and that the nexus of the informant's relationship to the charged crime is minimal. A reading of the transcript of the in camera hearing leaves no doubt that the informant's information could be of no help to defendants, and that the concealment of the informant's identity could not possibly deprive defendants of a fair trial.

The court's observations in *People* v. *Hardeman, supra,* 137 Cal.App.3d at page 832, are applicable here: "Illicit possession of narcotics is an inherently 'immediate' offense. The charge and arrest here were based upon circumstances which necessarily occurred or were existent solely at the specific time of arrest. No facts established the informant's presence at the

scene of the search and arrest. The only factually established relationship between the informant and the individual who he alleged was engaged in the sale of PCP occurred at least eight days prior to the arrest of respondent, if not earlier. We do not find that these circumstances established a 'close nexus' of the informant to the charged offense of constructive possession of PCP, nor do we feel that the facts establish a 'very recent' observation by the informant as to any situation which would bear on the guilt or innocence of the respondent as to the charged offense."

Anticipating that we might reverse the order of dismissal in this case, defendants contend that the trial court also based its decision to set aside the information on the magistrate's unreasonable restriction of cross-examination by defense counsel at the preliminary hearing. Contrary to the arguments advanced on this appeal, the court's disapproval of some of the magistrate's evidentiary rulings was not tantamount to a finding that defendants had been illegally committed. Moreover, the court expressly stated that it was not basing its decision to set aside the information on the magistrate's alleged limitation of cross-examination. In any event, we have reviewed the record in detail and can find no evidence that defendants were denied their constitutional right to fully and fairly examine the witnesses who testified at the preliminary hearing.

The order setting aside the information is reversed.

Roth, P. J., and Fukuto, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 24, 1990.