[No. B082526. Second Dist., Div. Seven. Mar. 15, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
SLAVTCHO DIMITROV, Defendant and Appellant.

COUNSEL

Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Robert Renner, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOODS (Fred), J.**—A jury convicted appellant of possession for sale of cocaine base (Health & Saf. Code, § 11378; count I), possession for sale of methamphetamine (Health & Saf. Code, § 11378; count II), and possession of a destructive device (Pen. Code, § 12303, a lesser included offense of Pen. Code § 12303.2; count III). Appellant then admitted two state prison felony allegations (Pen. Code, § 667.5 and Health & Saf. Code, § 11370.2). Appellant was sentenced to state prison for 11 years, 8 months.

Appellant's numerous contentions of trial court error concern improper and omitted instructions, denial of a Penal Code section 1538.5 motion, failure to disclose confidential informants, sustaining of a witness's self-incrimination claim, a ruling on scope of cross-examination if appellant testified, imposition of a fine, and admissibility of evidence.

We find no prejudicial error and affirm the judgment.

### FACTUAL BACKGROUND

There being no insufficiency of evidence claim, the facts may be stated simply. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

In April 1992 Ola Ray[1] rented apartment 301 at the Pinehurst Apartments, 6871 Franklin Avenue in Hollywood. About two months later the apartment manager, Mr. Korff, noticed that appellant, introduced to him as "Russian Paul," appeared also to be living in apartment 301. Large numbers of people visited apartment 301 at all hours of the day and night. In the early morning hours, between 2-5 a.m., they would holler from the street, asking appellant to let them in.

---

[1]Originally a codefendant, Ms. Ray, apparently pleaded guilty before appellant's trial.

Shortly before September 24, 1992, an informant told Los Angeles County Sheriff's Deputy Steven Freiwirth that "Russian Paul" was selling cocaine from apartment 301 and that a woman named Ola was aiding him. Under Deputy Freiwirth's surveillance, the informant entered apartment 301 and made a "controlled buy" of cocaine from appellant. Thereafter Deputy Freiwirth obtained a search warrant for apartment 301.[2]

On September 24, 1992, Deputy Freiwirth, with other officers, executed the search warrant. They attempted to enter apartment 301 with a battering ram but, because the front door was barricaded with a heavy exercise bicycle, could not. When Deputy Freiwirth managed to force open the door he saw Ola Ray toss a brown bag and a black bag to appellant who was standing by the balcony. Appellant caught the bags, entered the balcony, and threw the bags to the ground, three stories below.

The bags were recovered and later searched. The black bag contained six baggies of cocaine base totalling 19.10 grams, a 1.50 gram baggie of methamphetamine, a .56 gram baggie of methamphetamine, a digital scale, a cigarette case with baggies, and an assortment of pills. The brown bag contained a silver shot glass with a brown residue inside and burn marks on the bottom, a glass cup with white residue inside and burn marks on the bottom, a baggie containing amphetamine, a baggie containing mannitol, a baggie with crushed yellow pills, a bottle of inositol, a bottle of lactose, a broken bottle of mannitol, numerous new and used baggies, and what appeared to be a pipe bomb. The three-inch long pipe had a diameter of three-fourths of an inch, was plugged at each end, and had a two-inch pyrotechnic fuse. An explosives expert later took the pipe bomb to a field and remotely exploded it. The explosion caused a crater eighteen inches wide and eight or nine inches deep.

Deputy Freiwirth entered the apartment and searched it. The only occupants were Ola Ray and appellant. In the bedroom Deputy Freiwirth found a beeper and $475 in cash on a shelf near the bed and a large digital scale on the floor. On a dresser he found three containers of cocaine: 2.94 grams, .65 grams, and .41 grams. Also recovered were a notebook with handwritten records, a receipt, two notes addressed to "Paul," a driver's license in the name of Slavtcho Dimitrov, and a British passport in the name of a Mr. Payne. The bedroom closet contained only female clothing.

In the living room, two cocked crossbows facing the front door were propped on a storage chest. Nearby, in a violin case, were three arrows and an old musket. By a television was a penholder with "Paul" engraved in it. A closet contained assorted men's clothing in appellant's apparent size.

[2]This paragraph is based upon Deputy Freiwirth's search warrant affidavit and suppression hearing testimony, not his jury trial testimony.

Based upon the papers found in the bedroom a search warrant was executed for a storage unit at Security Self-Storage in Hollywood where Deputy Freiwirth found a triple beam scale and baggies with methamphetamine residue.

Deputy Freiwirth, a narcotics expert, testified the notebook contained "pay and owe" drug transaction records and that both the cocaine base and methamphetamine were possessed for sale.

Appellant called three witnesses who had felony convictions. They testified that apartment 301 was a "shooting gallery" where various people, but not appellant, periodically lived and one of them, Chico Ross, owned the brown and black bags. Appellant did not testify.

DISCUSSION

1. *"Destructive device" instructions.*

As part of its instructions concerning the charge of unlawful possession of a destructive device, the trial court instructed the jury "a pipe bomb is a destructive device."

Appellant contends "destructive device" is a technical term requiring special definition and merely instructing the jury that a pipe bomb is a destructive device was inadequate. Appellant is mistaken.

"Destructive device" is defined by statute to include a variety of specified weapons, including *"any* bomb." (Pen. Code, § 12301, subd. (a)(2).) As *People* v. *Quinn* (1976) 57 Cal.App.3d 251, 258 [129 Cal.Rptr. 139] observed, ". . . the term 'bomb' is not vague either on its face or as construed . . . ." Persons of common intelligence know what a bomb is. (*Id.* at p. 259.) It sufficed, under the instant circumstances, for the trial court to merely inform the jury "a pipe bomb is a destructive device."

Moreover, there was no dispute concerning whether or not the subject device was a bomb. Without contradiction a prosecution expert testified it was a bomb and when detonated it exploded. Defense counsel, in argument, stated "the bomb—pipe bomb is dangerous. We stipulate to that. It's terrible that people have that sort of thing. Very dangerous." Later, defense counsel stated: "The pipe bomb was in the brown bag . . . . It's like a firecracker with a metal casing . . . and the deputy is absolutely right, they are extremely dangerous. When it explodes it is made to fragment the casing . . . and that can injure people, kill them, absolutely. Terribly dangerous."

Appellant next contends the instruction ("A pipe bomb is a destructive device") was not *in*adequate but *too* adequate because by telling the jury "a pipe bomb fit the definition of 'destructive device' under Penal Code sections 12301 and 12303.2" the trial court "usurped the function of the jury." Appellant is mistaken.

As we have noted, in telling the jury a pipe bomb is a destructive device the trial court merely conveyed the applicable statutory definition of "destructive device." (Pen. Code, § 12301, subd. (a)(2).) "In instructing a jury it is proper for a trial court to explain and define terms which might otherwise lead to confusion." (*People* v. *Frye* (1992) 7 Cal.App.4th 1148, 1159-1160 [10 Cal.Rptr.2d 217].) "Destructive device" is such a term. Contrary to appellant's implication, the trial court did not instruct the jury the subject device *was* a pipe bomb, only that *a* pipe bomb is a destructive device. Accordingly, the trial court's instruction was proper and did not breach the "law/fact" distinction. (See *People* v. *Snead* (1993) 20 Cal.App.4th 1088, 1094-1095 [24 Cal.Rptr.2d 922]; *People* v. *Higareda* (1994) 24 Cal.App.4th 1399, 1405-1407 [29 Cal.Rptr.2d 763].)

Having so concluded, we need not consider whether error was invited by appellant, who requested the now complained of instruction. (*People* v. *Marshall* (1990) 50 Cal.3d 907, 931 [269 Cal.Rptr. 269, 790 P.2d 676]; *People* v. *Gallego* (1990) 52 Cal.3d 115, 183 [276 Cal.Rptr. 679, 802 P.2d 169]; *People* v. *Cooper* (1991) 53 Cal.3d 771, 830 [281 Cal.Rptr. 90, 809 P.2d 865]; *People* v. *Duncan* (1991) 53 Cal.3d 955, 970 [281 Cal.Rptr. 273, 810 P.2d 131]; see generally, 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) §§ 3287-3288, pp. 4063-4068.)

Finally, relying upon federal case interpretation of a comparable federal statute, appellant contends the trial court should have instructed the jury "that in order to qualify as a 'destructive device' . . . the device . . . must have the capability of causing substantial property damage or injury to life." Appellant is mistaken.

The Legislature made the possession of a destructive device a crime (Pen. Code, § 12303) and defined a destructive device to include "any bomb." (Pen. Code, § 12301, subd. (a)(2).) The Legislature did not require a bomb "have the capability of causing substantial property damage or injury to life."

Moreover, as we have noted, there was no dispute concerning the capability of the subject device. As defense counsel told the jury, "When it explodes it is made to fragment the casing . . . and that can injure people, kill them absolutely. Terribly dangerous."

Also, as we have noted, the instruction the trial court gave was one requested by appellant. (See *People* v. *Marshall, supra,* 50 Cal.3d 907, 931; 6 Witkin & Epstein, Cal. Criminal Law, *supra,* §§ 3287-3288, pp. 4063-4068.)

## 2. *Denial of Penal Code section 1538.5 motion.*

■ Appellant contends the trial court wrongly concluded he lacked standing to challenge the police search of apartment 301 and erred in denying his suppression motion. (Pen. Code, § 1538.5.)

We apply the following standard of review:

■ "A proceeding under section 1538.5 to suppress evidence is a full hearing on the issues before the superior court sitting as finder of fact. . . . The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence." (*People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585], citations omitted.) Our review is confined to the correctness or incorrectness of the trial court's ruling, not the reasons for its ruling. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 260, p. 267; see also *Philip Chang & Sons Associates* v. *La Casa Novato* (1986) 177 Cal.App.3d 159, 173 [222 Cal.Rptr. 800].)

■ Appellant had the "burden of showing a legitimate expectation of privacy" in the places searched or the things seized. (*People* v. *McPeters* (1992) 2 Cal.4th 1148, 1172 [9 Cal.Rptr.2d 834, 832 P.2d 146]; *Rakas* v. *Illinois* (1978) 439 U.S. 128, 148 [58 L.Ed.2d 387, 404, 99 S.Ct. 421]. See also *United States* v. *Salvucci* (1980) 448 U.S. 83, 90-91 [65 L.Ed.2d 619, 627-628, 100 S.Ct. 2547]; *People* v. *Melnyk* (1992) 4 Cal.App.4th 1532 [6 Cal.Rptr.2d 570].) Appellant had to establish not merely an unlawful search but an unlawful search *as to him.* ■ " 'An illegal search or seizure violates the federal constitutional rights only of those who have a legitimate expectation of privacy in the invaded place or seized thing. . . . The legitimate expectation of privacy must exist in the *particular area searched or thing seized* in order to bring a Fourth Amendment challenge.' " (*People* v. *McPeters, supra,* 2 Cal.4th 1148, 1171, citations omitted, original italics.)

(2c) Appellant did not establish standing. At the Penal Code section 1538.5 hearing appellant testified he did not live in apartment 301, had no key to the apartment, had no clothes there, had no possessions there, and

"had no expectation of privacy while [he was] in the apartment" because people were always "coming and going."

The trial court ruled: "Based on the testimony of the defendant that he had no possessory interest in the premises and he had no expectancy of privacy that he has no standing to bring this motion. So the motion will be denied for that reason." The ruling was correct.[3] (*Rakas* v. *Illinois*, *supra*, 439 U.S. 128, 148 [58 L.Ed.2d at pp. 387, 404].)

Appellant further contends trial counsel should have renewed the suppression motion at trial and relied upon prosecution evidence that appellant resided in apartment 301 and had possessions there. Failure to do so, appellant asserts, was ineffective assistance of counsel. We disagree.

■ "To establish entitlement to relief for ineffective assistance of counsel the burden is on the defendant to show (1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's findings. . . . '[W]here the record shows that counsel's omissions resulted from an informed tactical choice within the range of reasonable competence, the conviction must be affirmed.' . . . 'In some cases, however, the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged. In such circumstances, unless counsel was asked for an explanation and failed to provide one or unless there simply could be no satisfactory explanation, these cases are affirmed on appeal.' . . .

■ "As the United States Supreme Court noted in *Strickland* v. *Washington*: 'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

---

[3]Appellant does not challenge the trial court's ruling on the lawfulness of the officers' entry into the apartment. (Pen. Code, § 1531.) As to that entry the trial court ruled appellant did have standing.

We need not consider, nor did the trial court, whether the brown and black bags had been abandoned and therefore, as to them, there was no search.

defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." [Citation.] There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'" (*People* v. *Lewis* (1990) 50 Cal.3d 262, 288 [266 Cal.Rptr. 834, 786 P.2d 892], citations omitted.)

■ Appellant has failed to satisfy either of his two burdens. He has not shown that competent counsel would have, despite the prohibition of Penal Code section 1538.5, subdivision (i) ("After the special hearing is held in the superior court, any review thereafter desired by the defendant prior to trial shall be by means of an extraordinary writ of mandate or prohibition . . ."), renewed the motion. Nor has appellant shown that, if renewed, the motion would have been granted.

### 3. *Denial of motion to disclose identity of confidential informants.*

At a pretrial hearing Deputy Freiwirth testified that before obtaining and executing the search warrant, he had investigated appellant for several weeks. During the investigation he had obtained information from three reliable, confidential informants. All were drug users with criminal convictions. All told him that "Russian Paul," appellant, was selling cocaine from apartment 301. At least one informant, the one referred to in the search warrant affidavit had bought narcotics from "Russian Paul" and between September 13-22, 1992, while surveilled by Deputy Freiwirth,[4] made a "controlled buy" of cocaine from appellant in apartment 301.

Appellant moved for the disclosure of the informants' identities. Deputy Freiwirth claimed a privilege under Evidence Code section 1041 and the trial court heard evidence from Deputy Freiwirth and argument from counsel on how appellant might "benefit by the knowledge and ability to examine this particular confidential informant." The trial court ruled there was no "reasonable possibility that nondisclosure might deprive the defendant of a fair trial." (Evid. Code, § 1042, subd. (d).)

■ Appellant contends the trial court erred for two reasons. "First, the trial court was obligated to take sworn testimony from the informant himself, in order to determine whether he might possibly give exculpatory evidence on the issue of guilt or innocence." Appellant is mistaken.

As Justice Johnson wrote for this court: "Neither expressly nor by implication does Evidence Code section 1042, subdivision (d) *require* the confidential informant to be present or to testify at the in camera hearing. Instead,

---

[4]Deputy Freiwirth saw the informant enter apartment 301 with money and without cocaine and exit without money but with cocaine.

that section says at the in camera hearing 'the prosecution *may* offer *evidence* which would tend to disclose or which discloses the identity of the informant . . . .' (Evid. Code, § 1042, subd. (d); italics added.) It says nothing about the type of evidence to be offered on these issues. Moreover, the language of this section contemplates the possibility the prosecution will introduce evidence of some kind which will only *tend* to disclose the informant's identity, not disclose it. If the confidential informant was always present and always testified then his identity would always be disclosed to the judge. But the Legislature clearly anticipated there would be situations where the informant's identity was not revealed to the judge but where others would supply information perhaps about his relationship to the defendant or to the criminal transaction or to the premises involved which, if known to the defendant, might only tend to suggest the informant's identity." (*People* v. *Alderrou* (1987) 191 Cal.App.3d 1074, 1079 [236 Cal.Rptr. 740]; see also *People* v. *Fried* (1989) 214 Cal.App.3d 1309 [263 Cal.Rptr. 237].)

Appellant's second reason is "the limited record before the court . . . showed that the informants were witnesses to events that had occurred at the Ray apartment in the recent past . . . related to drugs, and thus" the informants might have given exculpatory evidence on the issue of guilt. Appellant is mistaken.

*People* v. *Alderrou, supra,* 191 Cal.App.3d 1074 is apt. There, as in the instant case, an informant purchased cocaine from the defendant "on numerous occasions at a certain address" (*id.* at p. 1076), the informant made a "controlled buy" of cocaine from the defendant at that same address, and an officer, relying upon the informant's information, obtained and executed a search warrant resulting in the seizure of cocaine, scales, baggies, etc. The defendant was charged with possession of cocaine for sale.

Justice Johnson's observations in *Alderrou* are applicable here:

"In the instant case there is little doubt the confidential informant could have supplied material testimony which might have reinforced the evidence of appellant's guilt. However, there is *no reasonable possibility* any evidence which appellant could *reasonably anticipate* eliciting from this informant could have *tended to exonerate* him of the charges for which he was convicted.

"In analyzing the evidence actually used to convict appellant and the evidence the confidential informant might have supplied, it is important to bear in mind what offense appellant was found to have committed. He was charged and convicted of possessing cocaine for sale in violation of Health

and Safety Code, section 11351. He was not convicted of selling cocaine or transporting it or giving it away. Appellant was not being charged nor was he convicted of the particular sale—or any sale—which he may have made to the confidential informant or which the confidential informant may have witnessed. Instead the crime for which he was charged and convicted was the possession of cocaine which had not yet been sold to anyone but was intended to be sold by someone at some time to someone else.

"The prosecution did not prove appellant possessed this cocaine for sale by introducing evidence he actually sold some other cocaine to the confidential informant on a previous occasion. Rather it relied on the quantity of cocaine found in appellant's possession combined with the scales, cutting compound, and other apparatus and supplies he also possessed which are typically associated with cocaine intended for sale rather than for personal use." (*People* v. *Alderrou*, *supra*, 191 Cal.App.3d 1074, 1081, original italics.)

The trial court did not abuse its discretion in concluding there was no reasonable possibility this confidential informant could give evidence on the issue of guilt that could result in appellant's exoneration.

In a related argument, appellant contends that because "the trial court sustained the prosecution's privilege . . . under Evidence Code section *1040* . . . the trial court was then required to make an appropriate finding adverse to the prosecution" under Evidence Code section 1042. (Italics added.) Appellant is mistaken.

The sustained privilege was under Evidence Code section 1041 (". . . a public entity has a privilege to refuse to disclose the identity of a person who has furnished information as provided in subdivision (b) . . .") not section 1040. Accordingly, since the trial court found the informant not to be a material witness, no adverse finding was appropriate or required. (Evid. Code, § 1042, subd. (d).)

4. *Sustaining of witness's fifth amendment claim.*

Michael Mors, who had five felony convictions, was called by appellant and testified *he* (not appellant) brought the crossbows to apartment 301, Chico (not appellant) owned the brown and black bags, and although he was a frequent visitor at apartment 301 he never saw appellant there and only met appellant in jail, after appellant's September 24, 1992, arrest. On cross-examination Mr. Mors, on self-incrimination grounds, refused to say *where* he had found the crossbows. The trial court sustained the privilege and struck Mr. Mors's crossbow testimony.

■ Appellant contends Mr. Mors had waived his privilege and the trial court erred in sustaining it and in striking Mr. Mors's crossbow testimony.

We need not consider the merits of appellant's contention because having failed to object in the trial court appellant may not complain on appeal. (Evid. Code, § 353; *People* v. *Rogers* (1978) 21 Cal.3d 542, 548 [146 Cal.Rptr. 732, 579 P.2d 1048]; *People* v. *Collie* (1981) 30 Cal.3d 43, 49 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776]; *People* v. *Simon* (1989) 208 Cal.App.3d 841, 849 [256 Cal.Rptr. 373].)

For the same reason, failing to object below, appellant's related contention—that the trial court's inquiry about the claimed privilege was inadequate—need not be considered.

5. *Ruling on scope of cross-examination if appellant testified.*

The passport seized in apartment 301 (in the name of Mr. Payne and with a photograph that appeared to be of appellant) bore Kenyan date stamps of July 31, 1988, and August 28, 1988.

During trial, defense counsel sought a preliminary ruling on the scope of cross-examination if appellant only were to testify that he was in a California prison from June 2, 1988, through September 11, 1989.

The following colloquy occurred:

"THE COURT: And if we get into that issue it seems you open up the entire box as to whether or not he was in fact a resident of that particular apartment on the day in question. That would be the position of the court. I'm sure that's what you were going to—

"[Defense counsel]: That would be the position of the court?

"[Prosecutor]: That's correct, and I would get into everything about possessing anything and everything.

"[Defense counsel]: Then I would like to consult with my client and see what his decision is.

"THE COURT: Did you by chance pull a—that jury instruction?

"[Prosecutor]: Yes, I did. I'm still having the one—

(Off the record.)

"THE COURT: The jury and the alternates are not in the courtroom. [¶] You are going to rest and defendant is not going to testify.

"[Defense counsel]: That's correct, your Honor.

"THE COURT: . . . you have—no, you don't need to get up—you have a right to testify. You have a constitutional right to testify. You also have a constitutional right not to testify and if you do not testify the jury will make its determination based upon the evidence that it's heard up to now and with some rebuttal that will be offered by the People. [¶] Do you understand that?

(Whereupon the defendant responded through the interpreter as follows:)

"THE DEFENDANT: Yes, your Honor.

"THE COURT: What is your intent, to testify or not to testify?

"THE DEFENDANT: No.

"THE COURT: You are not going to testify.

"THE DEFENDANT: No.

"THE COURT: Is that correct?

"THE DEFENDANT: No.

"THE COURT: Is that correct?

"THE DEFENDANT: Yes, I will not testify."

Thereafter the parties stipulated "that the defendant was in prison in California from June 2nd, 1988 through September 11, 1989 at which time he was paroled."

■ Appellant contends the trial court's "ruling" was erroneous and, notwithstanding the stipulation, prejudicial because it deprived him of the opportunity to testify. "Juries," appellant asserts, "are naturally curious to hear from an accused, and to hear from him directly, not through his lawyer . . . ."

We do not doubt the curiosity of juries to hear an accused testify. Nor do we doubt the interest of this jury in hearing appellant testify even if that

testimony consisted only of his California incarcerations from June 1988 to September 1989. What we do doubt is that appellant could have suffered prejudice by being denied this 10 seconds worth of testimony—when the substance of the testimony was later stipulated to.

Had appellant testified—but only that he had been incarcerated in California for 14 months—jury curiosity would have been whetted not quenched. Worse, the trial court would have instructed the jury they could consider appellant's failure to explain or deny any evidence against him as indicating the truth of that evidence. (See CALJIC No. 2.62 Defendant Testifying—When Adverse Inference May Be Drawn). By not testifying at all appellant was spared this adverse instruction.

Moreover, based upon the record, we are not satisfied the trial court made a "ruling," let alone an erroneous or reviewable one. Certainly the trial court did not specify—nor was he asked to do so—what questions the prosecutor might ask appellant about "Mr. Payne" and about the photograph, apparently of appellant, on the passport. Whatever "position" the trial court was in the process of delineating was aborted by defense counsel's interruption.

Further, the record fails to show any causal link between the trial court's tentative "position" and appellant's decision not to testify.

Finally, we observe that when a defendant voluntarily testifies in his own defense the People may "fully amplify his testimony by inquiring into the facts and circumstances surrounding his assertions, or by introducing evidence through cross-examination which explains or refutes his statements or the inferences which may necessarily be drawn from them. The provision of former Penal Code section 1323 'does not mean that the cross-examination must be confined to a mere categorical review of the matters, dates or times mentioned in the direct examination. . . . It may be directed to the eliciting of any matter which may tend to overcome or qualify the effect of the testimony given by him on direct examination.' " (*People* v. *Schader* (1969) 71 Cal.2d 761, 770-771 [80 Cal.Rptr. 1, 457 P.2d 841].)

6. *Unanimity instruction.*

Appellant contends the trial court erred in not giving a unanimity instruction (CALJIC No. 17.01) because "the jurors could have disagreed on what act appellant committed on the drug counts." Appellant argues that some jurors might have believed appellant possessed only the cocaine in the

bedroom while other jurors might have believed he possessed only the cocaine in the black bag.

*If* jurors could have reasonably relied upon different units of cocaine or methamphetamine to convict appellant then a unanimity instruction was required. (*People* v. *King* (1991) 231 Cal.App.3d 493, 501-502 [282 Cal.Rptr. 402].) Such was not the case.

In convicting appellant of possession for sale of methamphetamine the jury could only have relied upon the contents of the black bag, the only place where methamphetamine was found. By its guilty verdict on the charge the jury determined appellant possessed the black bag and its contents. That determination also resolved any uncertainty concerning the charge of possession for sale of cocaine. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913] overruled on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1].) In the black bag were the six baggies of cocaine, each a ready-for-sale "8-ball," totalling 19.10 grams of cocaine which narcotics expert Deputy Freiwirth testified were possessed for sale.

There is no factual uncertainty in the verdicts.

### 7. *Imposition of $300 fine.*

As part of its sentence, the trial court stated: "Pursuant to Government Code section 13967(a), defendant is ordered to pay a restitution fine to the State Restitution Fund in the amount of $300. The director of corrections may collect this restitution from the defendant's earnings in prison plus a service charge pursuant to subdivision D of section 13967."

Appellant claims the trial court erred in imposing this fine because it did not first determine appellant's ability to pay. We disagree for two reasons. First, the trial court made an implied determination by its sentence of appellant to state prison where, for a long time, he would have earnings. Second, by failing to object to the fine in the trial court appellant has waived the issue on appeal. (*People* v. *Gibson* (1994) 27 Cal.App.4th 1466, 1468 [33 Cal.Rptr.2d 217].)

### 8. *Admission of drug ledger.*

Appellant contends the trial court erred in admitting a drug ledger because it was "used for a hearsay purpose." Appellant is mistaken.

The trial court admitted the ledger (exhibit 18) "not for the truth of the matters asserted therein but as circumstantial evidence" of narcotic sales.

*If* the prosecution used the ledger for more than its admitted purpose, appellant failed to object and thereby waived any error (Evid. Code, § 353).

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 1995.