Filed 5/31/24  P. v. Love CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B326304 |
| Plaintiff and Respondent, | (Super. Ct. No. YA040317) |
| | (Los Angeles County) |
| v. | |
| GLEN QUINTRELL LOVE, | |
| Defendant and Appellant. | |

Glenn Quintrell Love was convicted by a jury of second degree robbery and first degree murder with a robbery-murder special circumstance.  (Pen. Code, §§ 187, 189, 190.2, subd. (a)(17)(A), 211.)[1]  The jury also found true that a principal was armed with a firearm during the commission of the offenses. (§ 12022.5.)  The trial court sentenced Love to life without the possibility of parole plus a consecutive year for the firearm enhancement.  We affirmed.  (*People v. Love* (Aug. 1, 2001, B140458) [nonpub. opn.].)

---

[1] All statutory references are to the Penal Code.

Love petitioned for resentencing under former section 1170.95, now renumbered without substantive change as section 1172.6.  The trial court denied the petition.  We reversed on the ground that the court incorrectly placed the burden of proof on Love.  (*People v. Love* (May 25, 2022, B302725) [nonpub. opn.].)  On remand, after an evidentiary hearing, the court found the prosecution proved beyond a reasonable doubt that Love is ineligible for resentencing.

We reverse and remand for a new evidentiary hearing.  The trial court misapprehended a material fact and did not make all the required findings.

FACTS

Raymond Williams was fatally shot one night after he won money gambling.  On the night of April 11, 1997, Chaka Thomas picked up Love and drove to a dice game in Hawthorne.  Several other men were there, including Lamar Salone and Williams.  Salone showed Thomas a semiautomatic pistol and said he was "strapped."  (*People v. Love*, *supra*, B140458.)  Love and Salone participated in the dice game and lost money.

Williams won his bets that evening and boasted about his luck to the others.  He left the game and drove away in his van.  Thomas left the game shortly after Williams departed and was joined by Love and Salone.

When they reached the corner of 139th Street and Kornblum Avenue, Salone asked Thomas to stop the car.  Thomas parked and Salone got out followed by Love.  A witness who was in the area testified, "At first I heard one shot, then about four or five after that."  (*People v. Love*, *supra*, B140458.)  Love ran back to the car and said "Let's go."  (*Ibid.*)  He was laughing as he said it.  As they were driving away, Love told Thomas that Williams

2

"started trippin so we had to knock him off." (*Ibid.*)  He showed Thomas a roll of money and offered him some, which Thomas refused.

Williams was still breathing after being shot.  He was alive when police and paramedics arrived, but he died after being taken to the hospital.

On the day after the shooting, Thomas and Salone drove to Love's house where they all discussed the crime and agreed on a story about Thomas giving Love a ride on the night of the dice game after Love's car overheated.

Herschel Houston attended the dice game on April 11.  He told police that he had a conversation with Love.  Love described the robbery and shooting.  Love said he had "jacked" Williams and that Williams had been shot in the head; Salone had fired the gun after Williams made a "funny" move. (*People v. Love, supra*, B140458.)

*Section 1172.6 Hearing*

Love did not present any new evidence at the hearing. Instead he argued that under *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), he was not a major participant in the crimes and did not act with reckless indifference to human life.  The trial court disagreed and found the prosecution proved its case beyond a reasonable doubt.

In so concluding, the trial court found:

"Under the *Banks* factors, I believe that there is sufficient circumstantial evidence and direct evidence to show the following:  One, that you were present the night before, and aware that the shooter in this case had a firearm.  I believe that the record shows that there was a gambling game going on that Mr. Love lost some significant amount of money in that game,

3

and had a motive to regain the money that was lost from the victim, Mr. Williams.

"I believe the record shows direct and circumstantially that Mr. Love was a participant in the robbery. He wasn't just present at the scene of the robbery, but he was present at the scene of the shooting. He was present with the knowledge that the shooter in this case did have a firearm, if not the same day, then the night before, which was in very close proximity to this robbery.

'There was significant evidence that you had a motive to quote, 'jack Mr. Williams,' and, in fact, . . . you stated personally that you jacked, that's the word used jacked, or robbed, the victim in this case.

"There is direct evidence that you removed money from the victim's pockets, that you attempted to share that money with other co-conspirators….

"So I think looking at the *Banks* factors you are aware that the weapon would likely be present, you were, in fact, aware that the gun was present the night before while the money was being lost by you….

"You were, in fact, present at the scene of the killing, you were not sitting in the car with one of the other co-conspirators, you were actually at the scene of where the victim was shot multiple times, put your hands in his pockets, you removed his money.

"So because you were present at the scene of the crime, you were in a position to facilitate or prevent the actual murder, and you did not prevent it. You were facilitating it by your presence, and support of the actual killer. And that facilitation was, again, with the knowledge and the motive, knowledge of the firearm

4

being present, and also your own particular motive to regain your lost gamble money."

## DISCUSSION

### *Section 1172.6*

Section 1172.6, subdivision (a) provides, in part: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts . . . ."

Under section 1172.6, defendants who were neither actual killers nor acted with intent to kill can be held liable for murder only if they were major participants in the underlying felony and acted with reckless indifference to human life. (*People v. Strong* (2022) 13 Cal.5th 698, 708.) The prosecution had the burden beyond a reasonable doubt to prove the defendant is not entitled to relief. (§ 1172.6, subd. (d)(3).)

### *Major Participant* (*Banks*)

In *Banks*, *supra*, 61 Cal.4th at page 803, our Supreme Court stated that in determining whether the defendant was a major participant in the underlying crimes, the finder of fact must consider the totality of the circumstances including: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the

5

killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?  No one of these considerations is necessary, nor is any one of them necessarily sufficient."

<em>Reckless Indifference</em> (<em>Clark</em>)

In *Clark, supra*, 63 Cal.4th at pages 618-623, our Supreme Court enumerated factors relevant to whether the defendant acted with reckless indifference to human life:  1) knowledge of weapons and use and number of weapons; 2) physical presence at the crime and opportunities to restrain the crime and/or aid the victim; 3) duration of the felony; 4) defendant's knowledge of the cohort's likelihood of killing; and 5) defendant's efforts to minimize the risks of violence during the felony.

II

<em>Substantial Evidence</em>

Love contends the trial court's order denying the petition is not supported by substantial evidence.

In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the judgment or order. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  We discard evidence that does not support the judgment or order as having been rejected by the trier of fact for lack of sufficient verity. (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.)  We have no power on appeal to reweigh the evidence or judge credibility. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.)  We must affirm if we determine that any rational trier of fact could find the elements of the crime beyond a reasonable doubt.  (*Johnson*, at p. 578.)

6

*Major Participant*

The trial court erred in assessing the *Banks* factors relating Love's knowledge that Salone had a firearm. The court found that Love had knowledge Salone had a firearm "if not the same day, then the night before [the shooting]." There is evidence Salone showed the gun to Thomas the night before the shooting, but no evidence Salone showed Love the gun on the day of the shooting. The court's misapprehension was caused most likely by the prosecutor misleading the court when he told the court, "[At the dice game] Mr. Love became aware Mr. [Salone] had a firearm because he showed it to him and said he was strapped."

The People argue there was one shot followed by a series of shots. Love must have known Salone was armed after the first shot. But it is not a fact on which the trial court's conclusion is based. The court believed Salone showed Love the gun at the dice game. The People also suggest that when Love and Salone followed Williams from the dice game, their obvious intent was to rob Williams, and Love must have known Salone was armed for that purpose. The People point out that when Love returned to Thomas's car, Love showed no surprise that Williams had been shot. But the trial court made no such findings. Instead, it appears to have based its decision in part on the false representation by the district attorney that Salone showed the gun to Love at the card game.

The trial court also made other findings in support of its conclusion that Love was a major participant in the crimes. But it is impossible to tell from the record how much weight the court placed on the mistaken finding in assessing the *Banks* factors. The defendant cannot get a fair determination if the trial court misapprehends the facts. We must remand for a new hearing.

*Reckless Indifference* (*Clark*)

In our previous opinion remanding the matter for a new hearing, we reversed in part because the trial court did not make findings on the relevant *Banks* and *Clark* factors. (*People v. Love*, *supra*, B302725.) Here, although the trial court made findings on the *Banks* factors, it did not mention *Clark*. It is possible the second time the court mentioned the *Banks* factors in its analysis it actually meant the *Clark* factors It is not entirely clear. There is some overlap between the factors. In any event, presumably the court's analysis of the *Clark* factors included the erroneous finding based on the prosecutor's representation that Love knew Salone was armed the night before the shooting. This is another reason we must remand the matter.

### III

*Right to be Present and*
*Confidentially Communicate with Counsel*

Love contends he was denied the right to be personally present at the hearing and to confidentially communicate with his counsel.

Love appeared by WebEx from prison. There is no way to confidentially communicate with counsel on WebEx. Love claims he was denied his right to be personally present under the Sixth and Fourteenth Amendments to the United States Constitution and his statutory right to a confidential telephone line to his counsel as required by section 977.2, subdivision (c) for incarcerated defendants appearing electronically.

The People argue that Love's appearance by WebEx satisfies his right to be present, that he waived his right to be present, and that the failure to provide a confidential telephone line pursuant to section 977.2, subdivision (c) was harmless. The

8

issue of Love's right to personally appear remains because he is entitled to a new hearing.

A defendant has the right to be present at any stage of a criminal proceeding critical to its outcome if his presence would contribute to the fairness of the procedure. (*People v. Clark* (2016) 63 Cal.4th 522, 568.) Section 1172.6, subdivision (d)(3) provides that the parties may offer new or additional evidence. Thus, the prosecution may produce one or more witnesses, or the defendant may wish to testify on his own behalf. Love has the right to be personally present so that he can confront any witnesses against him and so that the trial court can personally observe his demeanor if he testifies. Of course, Love can elect to appear electronically, in which case he must be provided with a telephone line to confidentially communicate with his counsel.

IV

*Love's Youth*

Love contends his counsel was ineffective for failing to request that the trial court consider his youth of 23 years when he committed the crimes. Love may raise the issue on remand.

The matter is reversed and remanded for a new hearing pursuant to section 1172.6.

NOT TO BE PUBLISHED.

GILBERT, P. J.

I concur:

BALTODANO, J.

9

YEGAN, J., Dissenting:

I respectfully dissent. This is a post-evidentiary resentencing appeal. The majority opinion reweighs the evidence and draws inferences away from the order here under review. This is not permissible. (E.g., *People v. Schell* (2022) 84 Cal.App.5th 437.) It also impeaches the trial court's order by using contemporaneous remarks. This is also not permissible. (E.g., *People v. Session* (2023) 93 Cal.App.5th 723, 730-731; see also *People v. Dimitrov* (1995) 33 Cal.App.4th 18, 27; *People v. Gibson* (1987) 195 Cal.App.3d 841, 853; *People v. Superior Court (Chapman)* (2012) 204 Cal.App.4th 1004, 1011; *People v. Baker* (2008) 164 Cal.App.4th 1152, 1156.) If the majority is correct, we remand for a third postjudgment hearing.

The facts, as stated in the majority opinion, lead to but one rational conclusion i.e.,— appellant was "in on" the robbery and murder, was a major participant, and acted with more than a reckless indifference to life. The trial court so found.

As noted in the majority opinion, the trial court recited that the firearm was shown to appellant at the dice game. Even if this is not supported by direct evidence, it is a fair inference. It seems obvious that appellant knew that Lamar Salone had a firearm even if it was not shown to appellant at the dice game. And, the only conclusion to be drawn by the trial court will be reiterated at the next hearing—appellant resorted to robbery and murder to retrieve his money lost in the dice game. He even bragged about how "we" jacked the victim.

As to the claim of lack of presence at the evidentiary hearing, there is no showing, as a matter of law, that appellant was not "present." And, any error in this regard is harmless

beyond a reasonable doubt.  (*People v. Santos* (2024) 100 Cal.App.5th 666, 677-678.)

NOT TO BE PUBLISHED.


YEGAN, J.

Laura C. Ellison, Judge

Superior Court County of Los Angeles

_____

Robert E. Boyce, under appointment by the Court of
Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief
Assistant Attorney General, Susan Sullivan Pithey, Assistant
Attorney General, Kenneth C. Byrne and Allison H. Chung,
Deputy Attorneys General, for Plaintiff and Respondent.