[No. A120721. First Dist., Div. One. Dec. 17, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
RONNIE YARBROUGH, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.

COUNSEL

Marylou Hillberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SWAGER, J.**—Defendant was convicted following a jury trial of carrying a concealed firearm (Pen. Code, § 12025, subd. (a)(2)), and carrying a loaded firearm in a public place (Pen. Code, § 12031, subd. (a)(1)).[1] He was sentenced to the middle term of two years in state prison for the conviction of carrying a loaded firearm in a public place, and sentence on the remaining conviction was stayed.

In this appeal defendant claims that his conviction of possession of a concealed weapon violates the Second Amendment to the United States Constitution, and the trial court gave erroneous instructions in response to jury questions on the charge of carrying a loaded firearm in a public place. He also challenges the trial court's sentencing decision to deny probation and impose a state prison term. We conclude that the conviction of possession of a concealed weapon does not contravene defendant's Second Amendment rights as interpreted in the United States Supreme Court's decision in *District of Columbia v. Heller* (2008) 554 U.S. ___ [171 L.Ed.2d 637, 128 S.Ct. 2783] (*Heller*), and the court properly instructed the jury on carrying a loaded firearm in a public place. We also find that no prejudicial sentencing error occurred. We therefore affirm the judgment.

## STATEMENT OF FACTS

On the evening of June 6, 2007, Officers Kevin Murphy and Michael Leite of the Oakland Police Department's Crime Reduction Team were on patrol in a "semi-marked police vehicle" in the 1400 block of 57th Avenue in East Oakland, an area notorious as an "open air drug market." The officers approached a group of "five Black males" ranging in age from 17 to "mid-20's" clustered near the "sidewalk area" at the rear of a 1980's vintage brown

---

[1] Both were felony convictions based on defendant's admission before trial that he was previously convicted of a violation of Penal Code section 12025, subdivision (a)(2).

Toyota Corolla parked in the driveway at 1423 57th Avenue. Some of them were holding open bottles of alcohol, and one was in possession of a clear plastic baggie. The vehicle was abandoned and had no license plates; the residence appeared to be unoccupied and had a "for sale sign" on the front lawn.

After observing the "subjects drinking in public," the officers decided to contact the group to "further investigate." Officer Murphy parked the police vehicle in the street facing into the driveway directly behind the Toyota. As he did so, all of the individuals who had been congregating around the Toyota put their alcohol containers down and began to scatter in different directions. The two officers focused on different individuals in the group.

Officer Leite observed defendant walk from the right front corner of the Toyota to the right rear of the vehicle. Defendant then turned toward the vehicle, leaned down, and pulled a black revolver from the waist pocket of his black, hooded sweatshirt. He opened his hand and tossed the revolver under the abandoned Toyota in front of the right rear tire. As defendant began to "walk away," Officer Leite arrested and handcuffed him. From under the car Officer Leite recovered the gun, which he identified as a Smith and Wesson .38-caliber Special. He opened the cylinder of the revolver and discovered five live rounds inside.

Meanwhile, Officer Murphy noticed another individual in the group, Antonio Poole, make "a very quick movement" away from the Toyota toward a staircase as he closed a clear plastic baggie that the officer suspected contained marijuana. Poole threw the baggie over the staircase and onto the lawn. Officer Murphy detained and handcuffed Poole. William Shaw, who was also in the group, was arrested on an "outstanding warrant." They were later transported to North County Jail.

The other two young men in the group, Tyree Ewing and Chad Frazier, were detained but not arrested. Aaron Frazier, a relative of both Chad Frazier and William Shaw, approached from a "rear apartment complex" and spoke to some of the individuals in the group after they were detained and handcuffed.[2] Frazier was agitated and complained to the officers that "his family and friends were the subjects" who had been detained. He specifically expressed to the officers that defendant "didn't have a gun." Frazier also informed the officers that "he was on parole" and "possibly had a warrant for his arrest." After the officers confirmed through a "records check" that Frazier was "a parolee at large with a warrant for his arrest," he too was "taken into custody and transported to jail." At the jail, Frazier reiterated to the officer that defendant "didn't have no gun."

---

[2] We will refer to Aaron Frazier as Frazier.

Frazier testified that he was in a parked car at the scene in front of 1423 57th Avenue, and observed the group of five who had converged around the abandoned Toyota, drinking alcohol. He "didn't see" defendant in possession of a gun. Frazier knew his cousin, William Shaw, "had the gun" in his back pocket before the police arrived. He then heard the sound of "metal hitting the ground" when the officers pulled their car onto the sidewalk. Frazier testified that Shaw must have been the one who "tossed" the gun under the car after the "police pulled up." He was convinced that defendant "didn't have a gun."

Defendant testified in his defense that about 8:30 p.m. on June 6, 2007, he arranged with his "weed person," John, to meet at 1423 57th Avenue to purchase marijuana. Defendant was aware that his friends bought marijuana "in front of that house," although he did not know the people who lived at the residence and had never been there to purchase drugs before. For about 10 minutes before the police arrived, he was "just talking, drinking," and "mingling" around the Toyota with his friends who had congregated there. Defendant was standing on the left side of the car near the base of a stairwell when he noticed the police officers pull into the driveway and park at a slant. As the officers got out of their vehicle, everyone started to move around. Defendant heard the sound of "metal hitting the ground." He placed his bottle on the top of the Toyota and walked toward the church on the corner, but an officer told everyone "to come back" and stand on the left side of the car. Officer Leite picked up the gun and handcuffed defendant. The officer then told defendant he was "going to jail" for possession of the gun, despite defendant's protest that the gun did not belong to him. Defendant denied that he possessed the gun "at any time" during the incident. He claimed that the gun belonged to Shaw. Defendant testified that he observed Shaw in possession of the same gun a few days before.

## DISCUSSION

I. *The Conviction of Possession of a Concealed Weapon.*

Defendant claims that in light of the recent United States Supreme Court's decision in *Heller, supra*, 554 U.S. ___ [171 L.Ed.2d 637], his conviction of possession of a concealed weapon on "private property" "violate[s] the protections under the Second Amendment to the United States Constitution." His position is that as applied to his possession of a concealed weapon "on a private driveway," Penal Code section 12025, subdivision (a)(2) must be found constitutionally "overbroad," as it "cannot be reconciled with the protection afforded by the Second Amendment" as stated in the *Heller* opinion. He asks us to reverse the conviction as constitutionally impermissible under the facts presented here.

## A. *Defendant's Failure to Object at Trial.*

We first resolve the Attorney General's contention that defendant forfeited his "Second Amendment claim" by failing to object on that ground in the trial court. The Attorney General argues that defendant's "as applied challenge" does not "present a pure question of law," but rather demands analysis of "disputed facts" that relate to his status as a "permissive visitor" on private property, and therefore the issue was "forfeited" without an objection.

"Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal. [Citations.] As the United States Supreme Court recognized in *United States v. Olano* [(1993)] 507 U.S. [725,] 731 [123 L.Ed.2d 508, 113 S.Ct. 1770], ' "[n]o procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' [Citations.] 'The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]' [Citations.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 880–881 [55 Cal.Rptr.3d 716, 153 P.3d 282].)

We agree with the Attorney General that defendant's claim of constitutional overbreadth demands at least consideration of facts pertinent to the statutory violation. (See *In re Sheena K., supra,* 40 Cal.4th 875, 887.) Nevertheless, we will consider the issue on the merits for several reasons. First, the issue is still one of law presented by undisputed facts in the record before us that does not require the scrutiny of individual circumstances, but instead requires the review of abstract and generalized legal concepts—a task that is suited to the role of an appellate court. (See *id.,* at pp. 887–888; *People v. Hines* (1997) 15 Cal.4th 997, 1061 [64 Cal.Rptr.2d 594, 938 P.2d 388]; *In re Justin S.* (2001) 93 Cal.App.4th 811, 815 [113 Cal.Rptr.2d 466].) We also confront the issue to avert any claim of inadequate assistance of counsel. (See, e.g., *People v. Marshall* (1996) 13 Cal.4th 799, 831–832 [55 Cal.Rptr.2d 347, 919 P.2d 1280]; *People v. Ashmus* (1991) 54 Cal.3d 932, 975–976 [2 Cal.Rptr.2d 112, 820 P.2d 214]; *People v. Sully* (1991) 53 Cal.3d 1195, 1218 [283 Cal.Rptr. 144, 812 P.2d 163]; *People v. Morris* (1991) 53 Cal.3d 152, 196 [279 Cal.Rptr. 720, 807 P.2d 949]; *People v. Hodges* (1999) 70 Cal.App.4th 1348, 1354–1355 [83 Cal.Rptr.2d 619]; *People v. Williams* (1998) 61 Cal.App.4th 649, 657 [72 Cal.Rptr.2d 58].) And finally, the defense had no reason to challenge the statute on the grounds asserted here until the decision in *Heller* was issued *after* trial of the matter was concluded and judgment was entered. (*People v. Sandoval* (2007) 41 Cal.4th 825, 837, fn. 4 [62 Cal.Rptr.3d 588, 161 P.3d 1146].) " 'A defendant will be excused from

the necessity of either a timely objection and/or a request for admonition if either would be futile. . . .' [Citation.]" (*People v. Boyette* (2002) 29 Cal.4th 381, 432 [127 Cal.Rptr.2d 544, 58 P.3d 391]; see also *People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 648–649 [130 Cal.Rptr.2d 873].) "A criminal defendant cannot be deemed to have waived or forfeited a legal argument which was not recognized at the time of his trial." (*People v. Cardenas* (2007) 155 Cal.App.4th 1468, 1479 [66 Cal.Rptr.3d 821].) We therefore conclude defendant did not forfeit the right to appellate review. (*People v. Sandoval, supra,* at p. 837, fn. 4; *People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1199 [67 Cal.Rptr.3d 871].)

## B. *The Claim of Constitutional Invalidity.*

■ Turning to the merits of the claim that Penal Code section 12025, subdivision (a)(2) is constitutionally overbroad and invalid as applied to defendant's possession of a weapon on private property, "we consider the following: 'A statute is invalid on its face and wholly void only when incapable of any valid application. [Citation.] In determining a statute's constitutionality, we start from the premise that it is valid, we resolve all doubts in favor of its constitutionality, and we uphold it unless it is in clear and unquestionable conflict with the state or federal Constitutions. [Citation.] A challenge to a statute's constitutionality must demonstrate that its provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions. [Citation.] The corollary to the challenger's burden is that if the court can conceive of a situation in which the statute can be applied without entailing an inevitable collision with constitutional provisions, the statute will prevail. [Citation.] A statute is not facially unconstitutional simply because it may not be constitutionally applied to some persons or circumstances; at a minimum its unlawful application must be substantial and real when judged in relation to the statute's plainly legitimate sweep. ■ Unless it is in total conflict with the Constitution, any overbreadth is cured by a case-by-case analysis of the particular fact situation. [Citation.] A statute will be declared invalid in its entirety only when its scope cannot be limited to constitutionally applicable situations except by reading in numerous qualifications and exceptions, i.e., rewriting it, or if it is invalid in certain situations and cannot be enforced in others without danger of an uncertain or vague future application. [Citation.]' [Citation.]" (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 423–424 [102 Cal.Rptr.2d 157].) "A statute is only overbroad if it 'prohibits a " 'substantial amount of constitutionally protected conduct.' " ' [Citation.]" (*People v. Rubalcava* (2000) 23 Cal.4th 322, 333 [96 Cal.Rptr.2d 735, 1 P.3d 52].)

Here, the precise inquiry is whether Penal Code section 12025, subdivision (a)(2) violates the Second Amendment principles articulated in

*Heller,* where the statute is enforced against a defendant who carried a concealed weapon on residential property that was, according to the evidence presented, fully accessible to the public. We begin by examining the *Heller* decision.

█ In *Heller, supra,* 554 U.S. ___, ___ [171 L.Ed.2d 637, 657], in the course of invalidating a prohibition by the District of Columbia on the possession of usable handguns in the home, the court announced that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation," self-defense, or other traditionally lawful purposes, unconnected with service in a militia.[3] A majority of the court held "that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any *lawful firearm in the home operable for the purpose of immediate self-defense.*" (*Heller, supra,* at p. ___ [171 L.Ed.2d at p. 683], italics added; see also *United States v. Bonner* (N.D.Cal., Sept. 23, 2008, No. CR 08-00389 SBA) 2008 U.S.Dist. Lexis 80765, *7–*8.)

The court added the vital admonition, however, that "we do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose.*" (*Heller, supra,* 554 U.S. ___, ___ [171 L.Ed.2d 637, 659].) The court emphasized that "the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right [to keep and bear arms] was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Id.,* at p. ___ [171 L.Ed.2d at p. 678]; see also *Mullenix v. Bureau of Alcohol, Tobacco, Firearms, and Explosives* (E.D.N.C., July 2, 2008, No. 5:07-CV-154-D) 2008 U.S.Dist. Lexis 51059, *6.) Although the court declined to adopt a level of scrutiny to be imposed upon Second Amendment restrictions or specify the limitations the government may place on an individual's right to possess firearms,[4] a nonexclusive list of the many "presumptively lawful regulatory measures" was enumerated. (*Heller, supra,*

---

[3] "We note that the Supreme Court did not address the question whether the Second Amendment is incorporated through the Fourteenth Amendment and thus applicable to the states." (*U.S. v. Fincher* (8th Cir. 2008) 538 F.3d 868, 873, fn. 2.) The right to bear arms is not recognized as one of the rights enumerated in the California Constitution. (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481 [97 Cal.Rptr.2d 334, 2 P.3d 581].)

[4] The court thus left standing the venerable holding in *United States v. Cruikshank et al.* (1875) 92 U.S. 542, 553 [23 L.Ed. 588], that the private right to bear arms is not a "fundamental" right under the Second Amendment to the United States Constitution. (See also *U.S. v. Nelsen* (8th Cir. 1988) 859 F.2d 1318, 1320; *Pencak v. Concealed Weapon Licensing Bd.* (E.D.Mich. 1994) 872 F.Supp. 410, 412–413; *In re Evans* (1996) 49 Cal.App.4th 1263, 1270–1271 [57 Cal.Rptr.2d 314].)

at p. ___, fn. 26 [171 L.Ed.2d at p. 678, fn. 26]; see also *United States v. Bledsoe* (W.D.Tex., Aug. 8, 2008, No. SA-08-CR-13(2)-XR) 2008 U.S.Dist. Lexis 60522, *8.) The court declared: "[T]he majority of the 19th-century courts to consider the question held that *prohibitions on carrying concealed weapons were lawful* under the Second Amendment or state analogues. [Citations.] Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. [¶] We also recognize another important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.' [(*United States v. Miller* (1939) 307 U.S. 174, 179 [83 L.Ed. 1206, 59 S.Ct. 816].)] We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.' [Citations.]" (*Heller, supra*, at pp. ___–___ [171 L.Ed.2d at pp. 678–679], fn. omitted, italics added; see also *U.S. v. Fincher, supra*, 538 F.3d 868, 874; *United States v. Harden* (D.Or., July 16, 2008, No. 06-79-KI) 2008 U.S.Dist. Lexis 54717.)

█ Without considering either defendant's standing to raise an over-breadth challenge or the reach of the Second Amendment to laws enacted by the states (*United States v. Cruikshank et al., supra*, 92 U.S. 542, 553; *Fresno Rifle and Pistol Club, Inc. v. Van De Kamp* (9th Cir. 1992) 965 F.2d 723, 729; *In re Rameriz* (1924) 193 Cal. 633, 651 [226 P. 914]), we find nothing in Penal Code section 12025, subdivision (a), that violates the limited right of the individual established in *Heller* to possess and carry weapons in case of confrontation. Section 12025, subdivision (a), does not broadly prohibit or even regulate the possession of a gun in the home for lawful purposes of confrontation or self-defense, as did the law declared constitutionally in-firmed in *Heller*. Rather, section 12025, subdivision (a), in much more limited fashion, specifically defines as unlawful carrying concealed within a vehicle or "concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person."[5] Further, carrying a firearm concealed on the person or in a vehicle in violation of section 12025, subdivision (a), is not in the nature of a common use of a gun for lawful

---

[5] Penal Code section 12025, subdivision (a) reads: "A person is guilty of carrying a concealed firearm when he or she does any of the following:

"(1) Carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.

"(2) Carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person.

"(3) Causes to be carried concealed within any vehicle in which he or she is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person."

purposes which the court declared to be protected by the Second Amendment in *Heller.* (See *People v. Wasley* (1966) 245 Cal.App.2d 383, 386 [53 Cal.Rptr. 877].) Unlike possession of a gun for protection within a residence, carrying a concealed firearm presents a recognized "threat to public order," and is " 'prohibited as a means of preventing physical harm to persons other than the offender.' [Citation.]" (*People v. Hale* (1974) 43 Cal.App.3d 353, 356 [17 Cal.Rptr. 697].)[6] A person who carries a concealed firearm on his person or in a vehicle, "which permits him immediate access to the firearm but impedes others from detecting its presence, poses an 'imminent threat to public safety . . . .' [Citation.]" (*People v. Hodges, supra,* 70 Cal.App.4th 1348, 1357.) ■ Treating as criminal defendant's concealment of a firearm under his clothing on a residential driveway that was not closed off from the public and was populated with temporary occupants falls within the "historical tradition" of prohibiting the carrying of dangerous weapons in publicly sensitive places. (*Heller, supra,* 554 U.S. ___, ___ [71 L.Ed.2d 637, 678].)

■ Rather than cast any doubt upon the continued constitutional validity of concealed weapons bans, the *Heller* opinion specifically expressed constitutional approval of the accepted statutory proscriptions against carrying concealed weapons. (*Heller, supra,* 554 U.S. ___, ___ [171 L.Ed.2d 637, 678].) Thus, in the aftermath of *Heller* the prohibition "on the carrying of a concealed weapon without a permit, continues to be a lawful exercise by the state of its regulatory authority notwithstanding the Second Amendment." (*United States v. Hall* (S.D.W.Va., Aug. 4, 2008, No. 2:08-00006) 2008 U.S.Dist. Lexis 59641, *3.) We conclude that neither on its face nor as applied to defendant's particular statutory violation does Penal Code section 12025 prohibit conduct protected by the Second Amendment as defined in *Heller.*

II. *The Supplemental Instructions on Penal Code Section 12031.*

Defendant also argues that the trial court committed instructional error in responses to inquiries by the jury during deliberations directed at the offense of carrying a loaded firearm in a public place (Pen. Code, § 12031, subd. (a)(1)), as charged in count 2.[7] In written questions the jury asked: "To

---

[6] We point out that Penal Code section 12026 provides an exception to the prohibition on possession of concealed weapons for any legally qualified citizen who carries a firearm either openly or concealed "anywhere within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident . . . ." (See also *Fiscal v. City and County of San Francisco* (2008) 158 Cal.App.4th 895, 906 [70 Cal.Rptr.3d 324].)

[7] Penal Code section 12031, subdivision (a)(1), provides: "A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory."

be found guilty of the second count: (1) must the defendant be on the sidewalk, or (2) is being on the driveway sufficient? (3) Define public place for us." After consulting with counsel, the court provided the jury with the following response: "(1) No. (2) Yes. (3) The area in front of a home, including a private driveway, is a public place if it is reasonably accessible to the public without a barrier." Defendant complains that the court's response "amounted to a directed verdict" on the element of a "public place" within the meaning of Penal Code section 12031. He also argues that the court inaccurately defined public place for the jury "in light of the decision" in *Heller.*

## A. *The Instruction as a Directed Verdict.*

We first confront defendant's claim that the trial court's responses, considered in the entirety, effectively "directed a verdict for the prosecution on the element of a public place in section 12031, subdivision (a)(1)." He asserts that the issue "should have gone to the jury," but the erroneous instruction "in effect created a directed verdict for the prosecution."

■ We agree with defendant that the constitutional right to a jury trial means that "no matter how conclusive the evidence, a trial court cannot directly inform the jury that an element of the crime charged has been established. Absent a stipulation by the defendant that an element is established or is admitted, the trial court must submit that question to the jury." (*People v. Moore* (1997) 59 Cal.App.4th 168, 181 [69 Cal.Rptr.2d 56]; see also *People v. Lawson* (1987) 189 Cal.App.3d 741, 747 [234 Cal.Rptr. 557].) " 'The prohibition against directed verdicts "includes perforce situations in which the judge's instructions fall short of directing a guilty verdict but which nevertheless have the effect of so doing by eliminating other relevant considerations if the jury finds one fact to be true." [Citation.] . . . "[N]o fact, not even an undisputed fact, may be determined by the judge." [Citations.]' [Citation.]" (*People v. James* (1998) 62 Cal.App.4th 244, 271–272 [74 Cal.Rptr.2d 7]; see also *People v. Wilkins* (1993) 14 Cal.App.4th 761, 778 [17 Cal.Rptr.2d 743].) "[I]t matters not whether the issue in question is one of fact or law. Due process requires that it be submitted to the jury." (*People v. Wilkins, supra,* at p. 778.) "If a judge were permitted to instruct the jury on the basis of assertedly 'undisputed' evidence that a particular element had been established as a matter of law, the right to a jury trial would become a hollow guarantee." (*People v. Figueroa* (1986) 41 Cal.3d 714, 730 [224 Cal.Rptr. 719, 715 P.2d 680]; see *People v. Moore, supra,* at p. 180.)

Here, the court directly advised the jury that a guilty verdict did not require proof that defendant was on the sidewalk. The remainder of the response effectively instructed the jury that defendant's presence on the private

driveway was sufficient to prove guilt, but only if the driveway was "reasonably accessible to the public without a barrier." We discern nothing in the response that usurped the jury's factfinding function. The court did not instruct the jury to find that the driveway was a public place for purposes of Penal Code section 12031. (Cf. *People v. Tapia* (2005) 129 Cal.App.4th 1153, 1162–1163 [29 Cal.Rptr.3d 158]; *People v. Jimenez* (1995) 33 Cal.App.4th 54, 59–60 [39 Cal.Rptr.2d 12].) Instead, the instruction left the jury with the task of making two essential factual determinations based upon the evidence as a prerequisite to a guilty verdict on count 2: first, that defendant was on the driveway; and second, that the driveway was reasonably accessible to the public. The instruction given by the trial court in response to the jury's inquiry did not remove any issue of fact from the jury or direct a verdict for the prosecution. (See *People v. Brown* (1988) 46 Cal.3d 432, 443–444 [250 Cal.Rptr. 604, 758 P.2d 1135]; *People v. Avanessian* (1999) 76 Cal.App.4th 635, 644–645 [90 Cal.Rptr.2d 367]; *People v. James, supra*, 62 Cal.App.4th 244, 272–273; *People v. Dimitrov* (1995) 33 Cal.App.4th 18, 26 [39 Cal.Rptr.2d 257]; *People v. Runnion* (1994) 30 Cal.App.4th 852, 855–856 [36 Cal.Rptr.2d 203]; *People v. Frye* (1992) 7 Cal.App.4th 1148, 1160 [10 Cal.Rptr.2d 217].)

B. *The Trial Court's Definition of Public Place.*

We turn to an examination of the substance of the court's instructional definition of "public place," which defendant claims was inaccurate in its inclusion of private property accessible to the public. Defendant further argues that the decision in *Heller* requires a reexamination of the definition of "public place" in Penal Code section 12031. He maintains that the "right to bear arms outlined in *Heller* should be applied to all privately owned homes and their surrounding property that is not generally opened to the public."

■ We commence our review of the content of the trial court's response by delineating the rule that when the jury specifically asked for a legal definition of the term "public place," the court was presented with the statutory obligation "to provide the jury with information the jury desires on points of law." (*People v. Smithey* (1999) 20 Cal.4th 936, 985 [86 Cal.Rptr.2d 243, 978 P.2d 1171]; see also *People v. Waidla* (2000) 22 Cal.4th 690, 746 [94 Cal.Rptr.2d 396, 996 P.2d 46].) Under Penal Code "section 1138 the court must attempt 'to clear up any instructional confusion expressed by the jury.' [Citation.]" (*People v. Giardino* (2000) 82 Cal.App.4th 454, 465 [98 Cal.Rptr.2d 315].) "This means the trial 'court has a primary duty to help the jury understand the legal principles it is asked to apply. [Citation.] This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the *court has discretion* under [Penal Code] section 1138 to determine what additional

explanations are sufficient to satisfy the jury's request for information. . . .' [Citation.]" (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1015 [109 Cal.Rptr.2d 464], italics added; see also *People v. Smithey, supra*, at p. 985; *People v. Davis* (1995) 10 Cal.4th 463, 522 [41 Cal.Rptr.2d 826, 896 P.2d 119].) Penal Code section 1138 does not demand elaboration upon the standard instructions by the trial court when the jury expresses confusion, but rather directs the court to "consider how it can best aid the jury and decide whether further explanation is desirable, or whether the reiteration of previously given instructions will suffice." (*People v. Moore* (1996) 44 Cal.App.4th 1323, 1331 [52 Cal.Rptr.2d 256].)

■ Further, to resolve the claim of a defective jury instruction we must determine whether its "meaning was objectionable as communicated to the jury." (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 276 [107 Cal.Rptr.2d 160].) " 'Here the question is, how would a reasonable juror understand the instruction. [Citation.] In addressing this question, we consider the specific language under challenge and, if necessary, the charge in its entirety. [Citation.] Finally, we determine whether the instruction, so understood, states the applicable law correctly.' [Citation.]" (*People v. Woodward* (2004) 116 Cal.App.4th 821, 834 [10 Cal.Rptr.3d 779]; see also *People v. Jensen* (2003) 114 Cal.App.4th 224, 239 [7 Cal.Rptr.3d 609].)

■ While the term "public place" is not defined in Penal Code section 12031, the definition given to the jury by the trial court in the present case was entirely consistent with existing case law that has construed the term in the context of similar statutes. "When construing statutes forbidding certain behavior in a 'public place' or 'public area,' California courts have routinely held that privately-owned property can constitute a public place." (*People v. Tapia, supra*, 129 Cal.App.4th 1153, 1161.)

Most notably, in *People v. Jimenez, supra*, 33 Cal.App.4th 54, 57, the defendant's sentence for selling cocaine was enhanced under Health and Safety Code section 11353.6, subdivision (b), for sale of a controlled substance "within 1,000 feet of . . . a public or private elementary, vocational, junior high, or high school," which in turn was defined in subdivision (g) of the statute to mean, " 'any *public area* or business establishment where minors are legally permitted to conduct business which is located within 1000 feet of any public or private [school].' " (*Jimenez, supra*, at p. 57, italics added.) The defendant contended that his sale of rock cocaine "in a residential driveway," as a matter of law was not a " 'public area' within the meaning of section 11353.6, subdivision (g)." (*Id.*, at pp. 56, 57.) The court concluded that the residential driveway was a public area within the meaning of Health and Safety Code section 11353.6. (*Jimenez, supra*, at p. 60.) A " 'public area,' " reasoned the court, is not "synonymous with 'public property.' When the Legislature uses the adjective 'public' to describe a location it

is not necessarily implying the location is under public ownership or control. For example, it is well established a 'public place' for purposes of Penal Code section 647 (disorderly conduct) is not synonymous with public property, 'but an area where a member of the public may be lawfully present.' [Citations.]" (*Id.*, at pp. 59–60.) Instead, for purposes of Health and Safety Code section 11353.6, the court determined that "the term 'public area' should be construed to include publicly owned locations such as streets, sidewalks and bus stops as well as those portions of private property which are readily accessible to the public. (Cf. *People* v. *Perez* [(1976)] 64 Cal.App.3d [297,] 301 [134 Cal.Rptr. 338], defining 'public place' as 'a location readily accessible to all those who wish to go there . . . .') This latter category includes private driveways." (*Jimenez, supra,* at p. 60; see also *People v. Tapia, supra,* 129 Cal.App.4th 1153, 1162.)

The "front area outside the house" of someone who was unknown to the defendant has been found to meet "the definition of 'public' for the purpose of [Penal Code] section 647, subdivision (f)." (*People v. Olson* (1971) 18 Cal.App.3d 592, 598 [96 Cal.Rptr. 132].) Penal Code section 647, subdivision (f) " 'penalizes the act of *being* in a public place while under the influence of intoxicating liquor . . . .' " (*Olson, supra,* at p. 596, quoting *In re Spinks* (1967) 253 Cal.App.2d 748, 751 [61 Cal.Rptr. 743].) The court in *Olson* determined that "[i]nasmuch as defendant," who was "a complete stranger" to the homeowner, was nevertheless "able to walk through the outside area of her home to the front door without challenge, it can hardly be denied that the area is open to 'common' or 'general use.' " (*Olson, supra,* at p. 598.)

And in *People v. Vega* (1971) 18 Cal.App.3d 954, 958 [96 Cal.Rptr. 391], the court offered a comparable definition of "public place" specifically "for purposes of section 12031 of the Penal Code." The court concluded that the "parking lot of a market," although on private property, was a public place since it was *"accessible to members of the public* having business with the market . . . ." (*Ibid.,* italics added; see also *In re Danny H.* (2002) 104 Cal.App.4th 92, 104–105 [128 Cal.Rptr.2d 222]; *People v. Perez, supra,* 64 Cal.App.3d 297, 301.)

■ We are also persuaded that to limit the definition of "public place" in Penal Code section 12031 to publicly owned property, as defendant suggests, would frustrate the purpose of the law, which is to provide protection from those who carry firearms in areas available or exposed to public use. A limited bright-line definition of "public place" that excludes all privately owned property would allow those who carry firearms to avoid the proscription of the law simply by moving a few steps off a road or sidewalk onto open, accessible private property, although they pose as much of a threat to

the public there as anywhere else. (See *In re Danny H., supra*, 104 Cal.App.4th 92, 104–105; *People v. Jimenez, supra*, 33 Cal.App.4th 54, 59–60.) We conclude that the trial court properly advised the jury that a private driveway may be a "public place if it is reasonably accessible to the public without a barrier."

Here, the front driveway of the residence had no obstacles to occupancy by the public. The car parked in the driveway appeared to be abandoned, and the residence was for sale. The driveway was unenclosed, visible to the public, exposed to general view, and had no other physical barrier to access. Defendant and his companions had gathered freely on the driveway, although the residence did not belong to any of them and they had no ownership or possessory interest in the property. The owner of the premises was neither present nor, as far as we know from the record, had the owner given permission to anyone to congregate there. Thus, the court did not err by instructing the jury that a finding of guilt did not depend on proof of defendant's presence on the sidewalk, and could be based on evidence he was on a driveway that was reasonably accessible to the public without a barrier.

Finally, we discern nothing in the decision in *Heller* that restricts the permissible scope of Penal Code section 12031 to publicly owned property or otherwise renders the trial court's instruction erroneous. To the contrary, the *Heller* opinion explicitly approved of "some statutory restrictions—the types of people who may exercise this freedom; *the places where this freedom may be exercised*; and, the ability to buy and sell the objects of this freedom— 'whose constitutionality under a strict scrutiny standard would be far from clear.' *Heller*, 128 S.Ct. at 2851 [(dis. opn. of Breyer, J.)]." (*U.S. v. Booker* (D.Me. 2008) 570 F.Supp.2d 161, 163, italics added.) Found violative of the Second Amendment in *Heller* was a law that imposed an "absolute prohibition of handguns held and used for self-defense in the home," but the court endorsed traditional regulations restricting firearm possession that are designed to promote and maintain public safety on government property or in publicly sensitive areas. (*Heller, supra*, 554 U.S. ___, ___, ___ [171 L.Ed.2d 637, 684, 678]; see also *United States v. Gliatta* (5th Cir. 1978) 580 F.2d 156, 160; *United States v. Dorosan* (E.D.La., June 30, 2008, Crim. B. No. 08-042) 2008 U.S.Dist. Lexis 49628, *10.) Defendant's act of carrying a loaded firearm while among a group of people congregated on a residential driveway open and available to public use in direct violation of Penal Code section 12031 does not find refuge in the Second Amendment. We conclude that the trial court's definition of public place was both a correct statement of law and constitutionally permissible.

III. *The Denial of Probation.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Accordingly, the judgment is affirmed.

Marchiano, P. J., and Flinn, J.,[†] concurred.

Appellant's petition for review by the Supreme Court was denied March 18, 2009, S169983.

---

[*]See footnote, *ante*, page 303.

[†]Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.