Filed 10/30/13  P. v. Chavez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>DANIEL ALBERTO CHAVEZ,<br><br>  Defendant and Appellant. | 2d Crim. No. B244746<br>(Super. Ct. No. VA122239-01)<br>(Los Angeles County) |

Daniel Alberto Chavez appeals a judgment following his conviction for carrying a loaded handgun in a public place.  (Pen. Code, § 12031, subd. (a)(1).)[1]  We conclude, among other things, that:  1) substantial evidence supports the finding that Chavez was in a public place when he carried a loaded handgun in a driveway of a residence, but 2) the trial court erred by not disclosing two citizen complaints about the arresting officers on Chavez's *Pitchess* motion (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531), 3) a new in camera review is required for three other citizen complaints, and 4) the trial court erred by not reviewing an Internal Affairs file which was produced at the in camera hearing.  We remand with instructions to produce discoverable information for a new *Pitchess* in camera review and a post-judgment hearing.

---

[1] All statutory references are to the Penal Code.  References to section 12031 are to the version in effect prior to January 1, 2012.

FACTS

On the evening of October 27, 2011, Sheriff's Deputies Jesus Urrutia and Jason Lanska were in a patrol car in the City of Norwalk. As they drove near a residence on Arlee Avenue, they saw Chavez, Carlos Silva, and Monica Ruiz standing in the driveway of the home. From a distance of 36 to 38 feet, Urrutia saw "something" in Chavez's hand.

Lanska shined a "spotlight" on Chavez who was holding a handgun in his right hand. Urrutia yelled, "[D]rop the gun, stop, drop the gun." Chavez appeared "surprised"; he turned, ran toward the residence, threw the gun on the roof and went into the house. Urrutia went to the front of the house and knocked on the door. Chavez came out and told Urrutia that he had been "in the house the whole time."

Urrutia retrieved a .38 caliber handgun from the roof of the house and determined it was "loaded." It was "an unregistered firearm." Chavez was taken into custody. He waived his *Miranda* rights and wrote the following statement: "I found the gun at the liquor store dumpster area. I decided to hang onto it and I never shot off the gun or anything like that. I can't afford to be in jail because I need to watch over my sick grandma."

In the defense case, Erica Miranda, a neighbor, testified that after the officers arrived, one of them "tackled" and handcuffed a man. It was not Chavez. Fifteen minutes later, they handcuffed her brother.

Chavez's mother testified that she and Chavez were in the house when the deputies arrived. Chavez was not in the driveway. When Urrutia arrived, he arrested another man, and he then searched the bushes near her house.

Chavez testified when the officers arrived he was not outside, not in the driveway, and he did not have a gun in his hand. He was in the house. He wrote the statement at the police station, but the words "are not true." The gun the police confiscated was not his. He wrote the statement because Urrutia threatened him. While he was in the patrol car with another suspect, Urrutia told them that "if no one takes the

blame for this burner, he [would] take [Chavez's] mother to jail." His mother owned the house. Urrutia advised him "to make up a story so that the judge could let [him] off with probation."

In rebuttal, Urrutia testified that he did not tell Chavez "what words to use" in his statement. Nor did he threaten to arrest Chavez's mother.

### The Pretrial Discovery Motion

Chavez filed a *Pitchess* motion for pretrial discovery. Chavez's trial counsel wrote in his declaration that the defense needed discovery about citizen complaints involving the two arresting officers. Counsel stated that Lanska 1) "lied" at the preliminary hearing, 2) filed a false written report, and 3) was fired by the sheriff's department. He said Urrutia "lied by his omission to correct" the false report prepared by Lanska.

The trial court granted the motion; it held an in camera review of citizen complaints about these officers. It ruled none were discoverable. Lanska did not testify at trial. A prosecutor confirmed that he had been terminated by the sheriff's department.

### DISCUSSION

### Carrying a Gun in a Public Place

Chavez contends there was no substantial evidence to support a finding that he was carrying a gun in a public place. He claims the prosecution's evidence was insufficient because it showed only that he held the gun in the driveway of a private residence. We disagree.

"The role of an appellate court in reviewing the sufficiency of the evidence is limited." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138.) We review the record in the light "most favorable to the judgment . . . ." (*Ibid.*) We do not weigh the evidence or decide the credibility of the witnesses. (*People v. Belcher* (1961) 189 Cal.App.2d 404, 407.) "'The reviewing court presumes in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence.'" (*People v. Halgren* (1996) 52 Cal.App.4th 1223, 1232.)

3

On the date of Chavez's offense, section 12031, subdivision (a)(1) provided, in relevant part, "A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any *public place* or on any *public street . . . .*"  (Italics added.)

Chavez contends the statute does not apply to him because the prosecution only proved he was on private property--a driveway of a private residence.  But "'[w]hen the Legislature uses the adjective "public" to describe a location, it is not necessarily implying the location is under public ownership or control.'"  (*People v. Yarbrough* (2008) 169 Cal.App.4th 303, 317-318.)  It may include "those portions of private property which are readily accessible to the public."  (*Id.* at p. 318.)  By enacting section 12031, the Legislature intended "to provide protection from those who carry firearms in areas available or exposed to public use."  (*Ibid.*)  "A limited bright-line definition of 'public place' that excludes all privately owned property would allow those who carry firearms to avoid the proscription of the law simply by moving a few steps off a road or sidewalk onto open, accessible private property, although they pose as much of a threat to the public there as anywhere else."  (*Id.* at pp. 318-319.)

In *Yarbrough*, the court affirmed the conviction of a defendant under section 12031 who had carried a gun on a private driveway.  It held the private driveway is a "public place" under the statute if "it is reasonably accessible to the public without a barrier."  (*People v. Yarbrough*, *supra*, 169 Cal.App.4th at p. 319.)  The court noted that "[t]he driveway was unenclosed, visible to the public, exposed to general view, and had no other physical barrier to access."  (*Ibid.*)

Here the driveway led to a public street in a residential area.  It was not enclosed; there was no barrier to separate the driveway from the street.  It was "visible to the public" and "exposed to general view."  (*People v. Yarbrough*, *supra*, 169 Cal.App.4th at p. 319; see also *In re Danny H.* (2002) 104 Cal.App.4th 92, 105 [defendant's act was in an open area visible to the public and police]; *People v. Olson*

4

(1971) 18 Cal.App.3d 592, 598 ["area outside in front of Mrs. Voisan's house, whether it be the driveway, lawn or front porch, it was a public place"].)

In addition, the prosecution's evidence showed that Chavez held the weapon in public view. The officers were able to see Chavez with the gun from their patrol car at a distance of 36 to 38 feet. (*People v. Jimenez* (1995) 33 Cal.App.4th 54, 62 [an open residential driveway where a drug offense took place was a public area where officers had an "unobstructed view of the sale from across the street"].) The gun was "visible to the public." (*People v. Yarbrough*, *supra*, 169 Cal.App.4th at p. 319.) Anyone passing by and seeing the weapon might have feared for their safety. Some law enforcement officers could have viewed it as a threat and taken different action than these officers with deadly consequences. Chavez's conduct consequently posed the threat to public safety which the statute was intended to prevent. (*Id*. at pp. 318-319.) Moreover, the prosecution's evidence shows Chavez did not possess the gun for an innocent purpose. He fled when the officers arrived, disobeyed an order to "drop the gun," and threw the weapon on the roof to hide it. The evidence is sufficient.

*The Pitchess Motion*

Chavez filed a *Pitchess* motion. (*Pitchess v. Superior Court*, *supra*, 11 Cal.3d 531.) The trial court found that he had established good cause to review personnel records involving citizen complaints about the arresting officers in the following areas: 1) (Deputy Lanska) "giving false testimony in court," 2) (Deputies Urrutia and Lanska) "filing false police reports" and "coerc[ing] confessions." After an in camera review, the trial court found there were "no citizen complaints that were discoverable." Chavez requests that we review in camera citizen complaints against these officers.

A defendant is "entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct . . . ." (*People v. Gaines* (2009) 46 Cal.4th 172, 179.) "If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed." (*Ibid*.) There is a liberal discovery standard favoring

5

disclosure where the information may assist the defense.  The trial court's "duty to disclose encompasses information that is not itself admissible but which 'may lead to admissible evidence.'"  (*Id*. at p. 182.)

The trial court made oral summaries of the citizen complaints in the in camera transcript.  Two of those complaints should have been disclosed to the defense.  They are:  1) custodian No. 215096--a complaint that deputies reported that a citizen "consented" to a search, but the complainant said he did not consent, and 2) custodian No. 217302--a complaint that deputies "took medication from a purse," but the officer reported there was only an empty bottle.  These complaints necessarily involved a challenge to the accuracy of the facts the officers reported.  This information is discoverable because it may lead to admissible evidence to support the defense claim about the alleged inaccuracy of the arrest report in this case and to challenge the officers' credibility.  (*People v. Gaines*, *supra*, 46 Cal.4th at p. 182; *People v. Zamora* (1980) 28 Cal.3d 88, 101.)  Credibility was critical here.  There was a conflict between the sole prosecution witness and three defense witnesses about whether Chavez was in the driveway and whether he possessed the gun.

There are three other citizen complaints for which a new in camera review is required.  In custodian No. 213090, the complainant made a serious misconduct allegation against the officer.  During the in camera review, the court said that her "complaints were unfounded."  But the department's determination not to sustain the complaint does not preclude discovery by the defense.  "Unsustained complaints are discoverable as well as sustained complaints." (*People v. Zamora*, *supra*, 28 Cal.3d at p. 93, fn. 1.)  In custodian No. 213081, the court did not specify the allegations the complainant made against the officer.  In custodian No. 205618, there is no indication whether the complainant made any specific factual allegations to support his claims of misconduct.  For these three complaints, the trial court must determine:  1) if the complainants made factual allegations to support their misconduct claims; 2) whether the officers reported different facts from those reported by the complainants; and 3) if there is

6

such a factual conflict, whether this "'may lead to admissible evidence'" for the defense. (*People v. Gaines*, *supra*, 46 Cal.4th at p. 182.)

*The Internal Affairs Investigation File*

During the in camera hearing, the custodian of records told the trial court there was "a pending Internal Affairs Investigation" of one of the arresting officers. The custodian produced a large Internal Affairs investigation file and a document entitled "notes." The court did not review the investigation file; it simply read the "notes" without indicating who wrote them. The custodian of records did not write the notes and he did not indicate who prepared them. The court's short oral summary from these "notes" does not sufficiently describe the nature of the alleged misconduct by the officer. The court did not conduct a complete in camera review because it did not examine the Internal Affairs file. (*Sisson v. Superior Court* (2013) 216 Cal.App.4th 24, 39 [the trial court has the "responsibility to examine the produced documents and assess the discoverability of the information contained in them"].) On remand, the trial court is directed to obtain that file, make an in camera review, and determine whether it contains or involves citizen complaints or other information that should be disclosed to defense counsel.

Disposition

The case is remanded to the trial court with instructions to: 1) disclose the relevant information about citizen complaints Nos. 215096 and 217302 to defense counsel; 2) conduct a new in camera review of citizen complaints Nos. 213090, 213081, and 205618 in a manner consistent with this opinion, make specific findings, and determine whether additional information should be disclosed to the defense; 3) review the Internal Affairs file and determine whether it contains discoverable information; and 4) conduct a post-judgment hearing to determine whether the defendant is entitled to a new trial. (See *People v. Gaines*, *supra*, 46 Cal.4th at p. 180.) At that hearing, the defendant has the burden to "demonstrate prejudice from the failure to disclose the relevant information" during the initial *Pitchess* motion. (*Id*. at p. 176.) If the defendant

7

shows there is "a reasonable probability the outcome would have been different had the information been disclosed," the trial court must order a new trial. (*Ibid*.) If the defendant does not meet his burden, the judgment remains in effect with the right of the defendant to appeal the order on the post-judgment hearing. (*Id.* at p. 181, fn. 3.) We conditionally reverse the judgment.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

8

Patrick T. Meyers, Judge

Superior Court County of Los Angeles

_____


Jin H. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Blythe J. Leszkay, Deputy Attorney General, for Plaintiff and Respondent.