Filed 10/19/22  P. v. Cortes CA4/2
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076206 |
| v. | (Super. Ct. No. RIF1701214) |
| RUBEN ADRIAN CORTES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bambi J. Moyer, Judge.  Affirmed.

Spolin Law, Aaron Spolin and Caitlin E. Dukes, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, A. Natasha Cortina, Acting Assistant Attorney General, Eric A. Swenson and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant Ruben Cortes was convicted and sentenced to life without the possibility of parole, plus several additional prison terms, for two counts of murder, two counts of attempted murder, and several gang and firearm enhancements. He contends the trial court prejudicially denied his motion for a mistrial and that the prosecutor committed prejudicial misconduct. We disagree and affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

F.O. was driving when he was approached by another car with several occupants, including defendant, began displaying West Side Riva gang signs. Defendant told the other occupants to "hit this fool," referring to F.O. Defendant and the others began threatening F.O. and accused him of being a snitch.

F.O. pulled into a parking lot, but the other car followed him. Defendant handed his gun to Joseph S. and urged him to shoot F.O. Joseph fired five shots, hitting F.O.'s car only once. F.O. fled the scene and reported the incident to the police.

Less than a year later, T.H., who has no ties to any gang, threw a party to celebrate a friend's birthday. She asked her brother, N.A., to provide security, check attendees for weapons, and collect an entrance fee. N.A. agreed, and completed the tasks with his friends, C., J.D., and Nathaniel H.

Defendant showed up at the party with Joseph and another fellow gang member, incorrectly believing it was being thrown by a rival gang. He told J.S. that he was "packing" and that he and his cohorts had come to the party to "do business" and "handle it." They refused to pay the entrance fee because "it's our f—king neighborhood." Defendant became confrontational and said he was with the "West Side Blue Devils clique."

C. and Nathaniel tried to deescalate the situation by escorting defendant and his cohorts outside. Defendant told Joseph, "it's time, bro" and explained, "'Once I start busting, just start running fool.'"

Defendant then began firing shots and hit Nathaniel. Someone returned fire and hit Joseph. Both of them died from gunshot wounds.

About a month later, F.A., a member of the Dogstown Rivas gang, was filling up his car at a gas station while playing loud music associated with his gang. Two men, who F.A. recognized as rival gang members, began shooting at him. Law enforcement identified defendant as one of the shooters based on surveillance footage from surrounding businesses due to defendant's shoes, a pair of which were later found in his home. An eye witness to the incident described having seen two Latino males, aged 18 or 19, approach a "rival gang" member pumping gas and shoot at him.

Defendant was charged and convicted of two counts of murder (Pen. Code, § 187, subd. (a); counts 1 & 2)[1] for the murders of Nathaniel A. and Joseph S., two counts of attempted murder (§§ 664, subd. (a)/187, subd. (a); counts 3 & 4), for attempting to kill F.O. and F.A., and one count of felon in possession of a firearm (§ 29800, subd. (a)(1); count 5). The jury found true multiple sentence enhancements: intentional killing committed for the benefit of a criminal street gang (§ 190.2, subd. (a)(22)) as to count 1; multiple murder special circumstance (§ 190.2, subd. (a)(3)) as to counts 1 and 2; personal, intentional discharge of a firearm (§§ 12022.53, subd. (c), 1192.7, subd. (c)(8)) as to count 3; intentional discharge of a firearm by a principal causing death or serious bodily injury (§ 12022.53, subds. (d), (e)) as to counts 1 and 4; and a violent offense committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) as to counts 1-4. In a bifurcated proceeding, defendant admitted that he had suffered a serious felony prior (§ 667, subd. (a)) and a strike prior (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)).

The trial court sentenced defendant to the following terms: two concurrent terms of life without parole for counts 1 and 2, plus two consecutive terms of 30 years to life for counts 4 and 5, plus a six-year upper term for count 5, plus a consecutive 25-year-to-life term for the count 1 enhancement, two determinate 20-year terms for the counts 3 and 4 enhancements, and an additional five-year term for the serious felony prior.

---

[1] All further statutory references are to the Penal Code.

DISCUSSION

A. *The Trial Court Properly Denied Defendant's Motion for a Mistrial*

During the trial, the prosecutor asked Riverside County Sheriff's Sergeant Frank Lodes about his review of the video footage from the gas station shooting. He explained that, based on his review of the footage, he determined that defendant was one of the shooters.

The prosecutor then asked Sergeant Lodes, "After you made that identification, are you aware of whether or not a search warrant was executed for [defendant's] home?" Sergeant Lodes responded, "I thought it was a probation search." "I don't remember it being a search warrant." The prosecutor replied, "So was there a search executed for his home?" Sergeant Lodes confirmed, "Yes."

Defendant moved for a mistrial based on Sergeant Lodes's testimony. He argued that Sergeant Lodes improperly and prejudicially told the jury that defendant was on probation at the time of gas station shooting.

The trial court denied the motion for three main reasons. First, Sergeant Lodes stated only that a probation warrant was executed at defendant's house; he did not say that a probation warrant for defendant's arrest. Second, Sergeant Lodes's comment was not prejudicial "in the least" because the jury had already heard evidence that defendant had a prior felony conviction and had served jail time. Third, Sergeant Lodes made the comment in passing and none of the jurors reacted to it.

"In reviewing rulings on motions for mistrial, we apply the deferential abuse of discretion standard. [Citation.] 'A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. [Citation.]'" (*People v. Wallace* (2008) 44 Cal.4th 1032, 1068.) The trial court "should grant a mistrial only when a party's chances of receiving a fair trial have been irreparably damaged." (*People v. Bolden* (2002) 29 Cal.4th 515, 555.)

The trial court reasonably found that Sergeant Lodes's testimony was not sufficiently prejudicial to warrant a mistrial. As the trial court observed, the jury already knew that defendant was an admitted gang member with a criminal record, which included a felony conviction and time served in prison. Even if the jury understood Sergeant Lodes as testifying that a probation warrant for defendant was executed at his house, defendant was on trial for two murders and two attempted murders. The trial court thus reasonably found that Sergeant Lodes's brief testimony was not "incurably prejudicial." (See *People v. Ledesma* (2006) 39 Cal.4th 641, 683 [testimony that defendant had been convicted of murder and sentenced to death and was on retrial for the offense not incurably prejudicial].) The trial court's instructions to the jury that they could convict defendant only based on the evidence, not based on passion or prejudice against defendant, sufficiently cured any prejudice from Sergeant Lodes's testimony. (See *ibid.*; see also *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 861 ["We

6

presume that jurors follow instructions [citation], even where supposedly 'improper inflammatory attacks' are at issue"].)

B. *There Was No Prejudicial Prosecutorial Misconduct*

During closing argument, the prosecutor emphasized defendant's recorded statements and argued they showed he was guilty as charged. In his closing argument, defense counsel noted that the prosecutor "gave a tremendous reliance on" those statements, but urged a different interpretation of them. In his view, defendant was exaggerating and lying to impress someone he thought was another gang member. His statements, according to defense counsel, were "nothing other than puffing, boasting himself" to improve the reputation of his gang.

The prosecutor began her rebuttal with the following: "That was a lot the digest. And as I listened to it, kept thinking, is he literally saying do not listen to the only person that knows exactly what happened and knows exactly why he did what he did? I like [defense counsel]. You probably can tell that. *But everything he told, he's just making it up.* And he's not evidence. The testimony from the witnesses is evidence. And the evidence found on the scene is evidence. *But the rest of that stuff is just made up.*" (Italics added.) Defense counsel did not object.

Defendant contends the prosecutor's rebuttal argument that "everything" defense counsel was "made up" constituted prosecutorial misconduct because it improperly

denigrated defense counsel. He also contends his defense counsel was ineffective for failing to object or move for a mistrial based on the prosecutor's misconduct.[2]

"When a prosecutor's intemperate behavior is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, the federal Constitution is violated." (*People v. Shazier* (2014) 60 Cal.4th 109, 127.) That did not occur here. The prosecutor's alleged misconduct, even if outside the bounds of acceptable argument, did not deny defendant due process or render his trial fundamentally unfair. (See *People v. Marquez* (1992) 1 Cal.4th 553, 575-576 [prosecutor may properly describe a defense as a "'heavy, heavy smokescreen laid down . . . to hide the truth from you.'"]; *People v. Frye* (1998) 18 Cal.4th 894, 978 [prosecutor permissibly called the defense "'ludicrous'" and a "'smoke screen'"]; see also *People v. Sandoval* (1992) 4 Cal.4th 155, 180 [prosecutor may describe witness's testimony as "lies"].)

We agree, however, that the prosecutor's rebuttal argument violated California law. "A prosecutor commits misconduct if he or she attacks the integrity of defense counsel, or casts aspersions on defense counsel." (*People v. Hill* (1998) 17 Cal.4th 800, 832.) The prosecutor was free to disagree with defense counsel's arguments and tell the jury they were misguided or not persuasive. But by arguing that "everything" defense

---

[2] The People argue defendant forfeited the issue by failing to object to the prosecutor's rebuttal argument. We will address the issue to "to avert [defendant's] claim of inadequate assistance of counsel." (*People v. Yarbrough* (2008) 169 Cal.App.4th 303, 310.)

8

counsel said in closing argument was "made up," the prosecutor improperly "attack[ed] the integrity of defense counsel." (*Ibid.*)

The prosecutor's misconduct, however, was harmless. Prosecutorial misconduct that violates state law warrants reversal only when it is reasonably probable that the defendant would have received a better outcome but for the misconduct. (*People v. Milner* (1988) 45 Cal.3d 227, 245; *People v. Crew* (2003) 31 Cal.4th 822, 839.) It is not reasonably probable that defendant would have received a better outcome had the prosecutor not made the purportedly improper arguments in rebuttal because the evidence of defendant's guilt was overwhelming. (See *People v. Fudge* (1994) 7 Cal.4th 1075, 1103-1104.)

To begin with, defendant was recorded by an undercover officer admitting to all of the offenses. (See *People v. Memro* (1995) 11 Cal.4th 786, 847 [error was harmless because "[defendant's] confession amounted to almost the whole of the prosecution's guilt and penalty case"].) Defendant told the officer in unambiguous, specific detail about the two murders and two attempted murders. His statement, which was consistent with other evidence, was powerful evidence of his guilt. (See *Arizona v. Fulminante* (1991) 499 U.S. 279, 296 ["'The defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . . .'"].) He told the officer that he encountered F.O., who defendant identified by name, and told Joseph to "bust" F.O. Defendant told the undercover office that he and his cohort began shooting at the birthday party to confront rival gang members, who defendant believed were

9

throwing the party. Defendant later admitted to shooting at a Dogstown Riva rival gang member at a gas station about two weeks after the party, which was consistent with the evidence of the shooting of Francisco A. Finally, defendant's statement admitting to the offenses was later corroborated in part when law enforcement used it to locate the gun defendant used at the birthday party.

And as for the birthday party incident, several eyewitness accounts were consistent with defendant's incriminating statements. These witnesses described the incident largely in the same way that defendant did in the undercover recording. A friend of defendant's testified that he saw defendant at the party. Another eyewitness testified that he saw three Latino males say something like "you think you can have a party in our f— king hood?" during an altercation with Nathaniel and his friends. Two witnesses testified that they saw three Latino males flee after the shooting.

As for the gas station shooting, surveillance footage showed that one of the shooters had the same pair of shoes that were later found in defendant's house. An eyewitness's description of the shooting was consistent with defendant's recorded statement.

In short, there was strong evidence of defendant's guilt that corroborated his own statement to an undercover officer unequivocally saying that he committed all of the charged offenses. As a result, the prosecutor's misconduct, if any, was harmless. We therefore reject defendant's claim that his defense counsel was ineffective for failing to

the alleged misconduct.  (See *People v. Hart* (1999) 20 Cal.4th 546, 624 [to establish ineffective assistance of counsel "'prejudice must be affirmatively proved'"].)

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.